UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACY L. FORREST,<br><br>                    Plaintiff,<br><br><br>          -against-<br><br><br>NEW YORK CITY HOUSING<br>AUTHORITY, LISA BOVA-HIATT,<br>DAVID ROHDE, and HALEY STEIN,<br><br>                    Defendants. | **Case No.:**<br><br><br>**COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiff Tracy L. Forrest ("Plaintiff" or "Mr. Forrest"), by and through his undersigned

attorneys, as and for his Complaint, alleges upon knowledge as to himself and his own actions,

and upon information and belief as to all other matters, as follows:

I.  **NATURE OF THE ACTION**

1.      This is an action in which Plaintiff seeks recovery for injuries, and to remedy

unlawful employment discrimination and retaliation, in violation of the Age Discrimination in

Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), the New York City Human Rights Law as

codified in New York City Administrative Code, § 8-107 *et seq.*, and the New York State

Human Rights Law, as codified in New York Executive Law Section 290 *et seq.*

2.      Despite 30 years practicing law, and 20 years as an attorney employed by

Defendant New York City Housing Authority in its Law Department, Plaintiff was subjected to

discrimination on the basis of his age and gender, subjected to a hostile work environment on the

basis of his age and gender, stripped of his direct reports, and wrongfully counseled, disciplined,

suspended, and terminated from his employment, all because of his protected group characteristics (Plaintiff is male and was 57 years of age at the time of his termination).  In addition, Plaintiff was retaliated against following his complaints and opposition to Defendants' discriminatory treatment of him.

3.     As a result of Defendants' discriminatory and retaliatory treatment of Plaintiff, Mr. Forrest has been unlawfully denied his rightful employment opportunities and positions, and to a workplace free from hostility because of his protected group characteristics, and has further suffered emotional distress, humiliation, and pain and suffering as the result of Defendants' discriminatory and retaliatory treatment of him.  Mr. Forrest seeks recovery for injuries, and to remedy unlawful discrimination and retaliation in employment, caused by (a) violations by Defendant New York City Housing Authority of the ADEA, and (b) violations by Defendants New York City Housing Authority, Lisa Bova-Hiatt, David Rohde and Haley Stein (collectively "Defendants") of (a) the New York City Human Rights Law, § 8-107(1)(a), (6) and (7) of the Administrative Code of the City of New York, and (b) the New York State Human Rights Law, Section 296(1)(a), (6) and (7) of the New York Executive Law, for their differential treatment of Plaintiff on the basis of age and gender, as well as Defendants' retaliatory response to Plaintiff's protected activity, namely, his asserted opposition to alleged discriminatory conduct and acts committed against him.

## II.  <u>THE PARTIES</u>

4.     Plaintiff is a former employee of Defendant New York City Housing Authority. Plaintiff is male and 58 years old, and was 57 years of age at the time of his termination from employment.  Plaintiff resides in Westchester County, New York.  Defendants suspended

Plaintiff from his employment on March 4, 2022, one business day after he filed an internal

Complaint with NYCHA's Department of Employment Opportunity against the Defendants, and

Defendants further notified him on March 4, 2022 that his employment termination would be

effectuated on April 2, 2022.  Sometime after March 4, 2022, New York City Housing

Authority's Human Resources Department contacted Mr. Forrest and advised him that if he

wanted to receive pension benefits, health insurance benefits for his family of 4 and get paid for

some of his unused but accrued vacation days, he must submit the required forms immediately.

Mr. Forrest complied.  On March 24, 2022 and April 1, 2022, Mr. Forrest submitted the requisite

forms.

5.      Defendant New York City Housing Authority ("NYCHA") is an "employer"

within the meaning of ADEA, Section 296 of the New York Executive Law, and § 8-107(1) of

the Administrative Code of the City of New York.  NYCHA is a public benefit corporation

organized under the laws of New York and operates more than 340 public housing developments

in New York City.  Its principal offices are located at 250 Broadway, New York, New York

10007 and 90 Church Street, New York, New York 10007.

6.      Defendant Lisa Bova-Hiatt, Esq. ("Ms. Bova-Hiatt) is NYCHA's Executive Vice-

President for Legal Affairs and General Counsel.  Ms. Bova-Hiatt is an "employer or an

employee or agent" of NYCHA within the meaning of § 8-107(1) of the Administrative Code of

the City of New York.  In addition, (a) pursuant to § 8-107(6) and (7) of the Administrative Code

of the City of New York, Ms. Bova-Hiatt aided, abetted, incited, compelled or coerced the

discriminatory and retaliatory acts committed against Mr. Forrest which are forbidden under § 8-

107(1) of the Administrative Code of the City of New York, and (b) pursuant to Section 296(6)

of the New York Executive Law, Ms. Bova-Hiatt aided, abetted, incited, compelled or coerced the discriminatory and retaliatory acts committed against Mr. Forrest which are forbidden under New York Executive Law Section 296(1) and (7).

7.    Defendant David Rohde, Esq. ("Mr. Rohde") is NYCHA's Managing Attorney and Senior Vice-President for Legal Affairs and a member of the Office of General Counsel (hereinafter, the "OGC") since he was hired by NYCHA.  Mr. Rohde is an "employer or an employee or agent" of NYCHA within the meaning of § 8-107(1) of the Administrative Code of the City of New York.  In addition, (a) pursuant to § 8-107(6) and (7) of the Administrative Code of the City of New York, Mr. Rohde aided, abetted, incited, compelled or coerced the discriminatory and retaliatory acts committed against Mr. Forrest which are forbidden under § 8-107(1) of the Administrative Code of the City of New York, and (b) pursuant to Section 296(6) of the New York Executive Law, Mr. Rohde aided, abetted, incited, compelled or coerced the discriminatory and retaliatory acts committed against Mr. Forrest which are forbidden under New York Executive Law Section 296(1) and (7).

8.    Defendant Haley Stein, Esq. ("Ms. Stein") is Special Counsel to Ms. Bova-Hiatt and a member of the OGC since she was hired by NYCHA.  Ms. Stein is an "employer or an employee or agent" of NYCHA within the meaning of § 8-107(1) of the Administrative Code of the City of New York.  In addition, (a) pursuant to § 8-107(6) and (7) of the Administrative Code of the City of New York, Ms. Stein aided, abetted, incited, compelled or coerced the discriminatory and retaliatory acts committed against Mr. Forrest which are forbidden under § 8-107(1) of the Administrative Code of the City of New York, and (b) pursuant to Section 296(6) of the New York Executive Law, Ms. Stein aided, abetted, incited, compelled or coerced the

-4-

discriminatory and retaliatory acts committed against Mr. Forrest which are forbidden under New York Executive Law Section 296(1) and (7).

### III. <u>JURISDICTION AND VENUE</u>

9.      This Court has original subject matter jurisdiction over this matter based upon a federal question (28 U.S.C. § 1331) presented under the ADEA.  Administrative proceedings required pursuant to 29 U.S.C. § 626 as a prerequisite to commencing this action under the ADEA were instituted with the U.S. Equal Employment Opportunity Commission more than sixty days prior to the commencement of this action.

10.     Supplemental jurisdiction over Plaintiff's claims alleging violations of Title 8 of the Administrative Code of the City of New York exists pursuant to 28 U.S.C. § 1367(a).  On or about July 30, 2022, pursuant to § 8-502(c) of the Administrative Code of the City of New York, a copy of this Complaint was served upon the New York City Commission on Human Rights and the Corporation Counsel, Law Department of the City of New York.

11.     Venue is proper under 28 U.S.C. § 1391.  Acts and transactions herein complained of have taken place in this State, including the unlawful employment and labor practices or acts about which Plaintiff complains.  Defendants may be found in this district and Plaintiff was employed with all employment records maintained in this district.

### IV. <u>STATEMENT OF FACTS</u>

12.     At the time of his termination from employment by Defendants, Mr. Forrest was 57 years of age.  He was employed by NYCHA for twenty years, from April 1, 2002 until the termination of his employment, orally communicated to him on March 4, 2022, followed up in writing on March 4, 2022, with an effective date of April 2, 2022.  For the period he was notified

of his termination until the termination's effective date, Defendants suspended Mr. Forrest from performing his work.

13.    Mr. Forrest was employed by NYCHA as an attorney in its Law Department.  For the vast preponderance of his employment, until relatively recent changes in NYCHA's managerial ranks commencing in 2020, including its supervisory representatives, Mr. Forrest enjoyed fair and equal treatment in connection with the terms and conditions of his employment, and was the recipient of promotions by previous NYCHA administrations -- to Executive Agency Counsel/Senior Counsel, and then to Chief of the Landlord/Tenant Division in which he supervised more than a dozen NYCHA attorneys and support staff, overseeing the litigation of thousands of cases on behalf of NYCHA.  Mr. Forrest was part of the senior management team.

14.    By way of example, until 2020, Mr. Forrest regularly attended "Rent Stat" meetings with NYCHA high-level executives, meetings with senior members of NYCHA Operations and senior property management, meetings with marshals, meetings with the Chair, General Manager, and other high level management including former NYCHA General Counsels, as well as meetings with supervising housing court judges/personnel.  Mr. Forrest also attended monthly and weekly managerial meetings and was further responsible for drafting responses to inquiries from the press, politicians, and the NYCHA Chair's office.  Mr. Forrest handled other high-profile matters, including, but not limited to: a commercial holdover case concerning a tenant who owed hundreds of thousands of dollars in back rent and politicians intervened; a commercial holdover case about a tenant who owed hundreds of thousands of dollars and the NYCHA's Chair's office was monitoring the case; cases in which a tenant was the last resident in a building that was entirely being removed from the rent roll; and supervising

-6-

numerous class actions, including one in which the tenants were seeking to hold the Chair in criminal contempt.  In addition, Mr. Forrest was appointed by a former General Counsel as the "Holdover Coordinator" of "Operation Safe Housing," a mayoral initiative in which he personally expedited cases involving highly non-desirable tenants and registered sex offenders who had committed very serious crimes.  A number of these cases made the local newspapers. Finally, Mr. Forrest also had responsibility for training New York City Housing Court Judges on NYCHA's procedures and periodically lectured hundreds of property managers, assistant property managers, housing assistants, superintendents, and other development staff on housing court matters.

15.     Indeed, in September, 2020, the Supervising Judge of New York City Housing Court advised Mr. Forrest at the end of the training of the Housing Court Judges that he had done a "great job" and that he should conduct future interactive training sessions.

16.     In recognition of Mr. Forrest's exemplary service and performance, Ms. Bova-Hiatt's predecessor as NYCHA's General Counsel, Kelly MacNeal, recommended and accorded Mr. Forrest a raise in February 2020, just days before Ms. Bova-Hiatt assumed the position.

17.     For almost the entirety of his employment by NYCHA, Mr. Forrest earned and was accorded exemplary reviews and performance evaluations, including those from his direct supervisors and from Ms. Bova-Hiatt's predecessor.  Ms. MacNeal wrote in a memorandum dated February 3, 2020:  "Tracy supervises a unit consisting of 20 employees (15 attorneys, 5 support staff).  The Landlord/Tenant Division handles approximately 25,000 cases and approximately 60,000 court appearances per year throughout the 5 boroughs.  Tracy has fostered a team spirit within his Division and [has] encouraged the employees to work in a cohesive team

environment.  The L&T Division is a highly effective department under his supervision."  That assessment of Mr. Forrest quickly changed with NYCHA's institution of its harshly discriminatory treatment of him because of his age and gender.

18.     In February 2020, soon after Ms. Bova-Hiatt was appointed as the new General Counsel, the OGC was created, which was comprised of employees in various positions reporting up to the General Counsel.  Ms. Bova-Hiatt swiftly filled its ranks with a number of younger and inexperienced lawyers, including Ms. Stein, Special Counsel to Ms. Bova-Hiatt, and Hannah Roth, Senior Counsel to Ms. Bova-Hiatt and, as of July, 2021, the Interim Chief of the Landlord/Tenant's Division including Transformation/Reorganization.  Ms. Stein and Ms. Roth, neither of whom has any experience in landlord/tenant matters, are both much younger than Mr. Forrest and are female.

19.     In July, 2021, Mr. Forrest's title changed to Chief of Litigation within the Landlord/Tenant Division.  The tone and structure of NYCHA's Law Department began to change, slowly at first and then more abruptly starting in October, 2021 when his title changed, once again, to Chief of Court Appearances.  These changes were overseen by Guidehouse, a consulting company retained by NYCHA to reorganize and transform NYCHA's Law Department.  This "reorganization" or "transformation," as adopted by NYCHA and as conveyed in a so-called "Town Hall" on July 15, 2021, expressly utilized a process called "Revamping the Law Department:  People," which included NYCHA's explicit acknowledgement in 2021 that it was making employment decisions based upon overtly age-based considerations, including in "revamping its "aging" Law Department.  Indeed, Mr. Rohde, another member of OGC, expressly stated, at the Town Hall, and in managerial meetings Mr. Forrest was permitted to

attend, that NYCHA's Law Department intended to bring in younger attorneys since he explicitly acknowledged many attorneys in the Law Department were nearing retirement age as Defendants implemented a plan for "succession," as is clearly documented in the Town Hall presentation, a candid example of Defendants' age-based consciousness.

20.     As part of that transformation, in July 2021, Defendants, through NYCHA's recently created OGC, removed the 57-year-old Mr. Forrest from his participation in executive-level decision-making and even participation in executive-level meetings, which had been components of his employment for many years.  Under the direction of Ms. Bova-Hiatt, he was replaced in a leadership role by Ms. Stein and Ms. Roth, women in their mid-thirties to early forties.  In addition, Ms. Roth was accorded the title of Interim Chief of the Landlord/Tenant Division including Transformation/Reorganization, despite her utter lack of experience, and Mr. Forrest was transferred to Chief of Litigation within the Landlord/Tenant Division of NYCHA's Law Department.  Ms. Roth's new role was not only Interim Chief of the Landlord/Tenant Division, albeit while being utterly inexperienced, but she also was in charge of the Landlord/Tenant transformation process.

21.     In September 2021, Defendants further "revamped" Mr. Forrest's standing:  Ms. Stein and Mr. Rohde invited Mr. Forrest to a meeting.  Mr. Forrest's direct supervisor, Mr. Mordi, was invited to the meeting as well, but he did not concur with anything presented to Mr. Forrest by Ms. Stein and Mr. Rohde; indeed, Mr. Mordi did not even speak at the meeting.  In that meeting, Mr. Rohde and Ms. Stein requested that Mr. Forrest submit answers to four specific questions in a plan being developed by Defendants regarding processing different types of cases in the Landlord/Tenant Division of NYCHA's Law Department.  This request did not in any way

identify or address any alleged performance issues and did not refer to any performance issues. It was neither an instructional memorandum nor a counseling memorandum.  Mr. Forrest complied and submitted a written response answering the four questions little more than a week later, on September 30, 2021.  Plaintiff's response was met with silence by Mr. Rohde and Ms. Stein.  In fact, neither Mr. Rohde nor Ms. Stein ever provided Mr. Forrest with any written or oral feedback to Mr. Forrest's response to the plan.

22.     Instead, on October 25, 2021, without any explanation of any kind other than Ms. Stein's hostile statement to Mr. Forrest that "we are done with you," and her unfair criticism of Mr. Forrest for not including any additional resources in the plan, even though the request specifically stated that no additional resources should be requested, Mr. Rohde and Ms. Stein stripped Mr. Forrest of all his "reports" (attorneys and support staff who reported to him) and provided no staff other than a subsequently hired part-time intern in in or about January 2022, who was a law student with no litigation experience.  Ms. Stein and Mr. Rohde informed Mr. Forrest that a permanent Chief of the Landlord/Tenant Division would be announced soon to replace the Interim Chief, Ms. Roth, and all reports would report to that person.

23.     Over the strenuous objections of Mr. Mordi, Plaintiff's direct supervisor, within weeks, effective November 4, 2021 (and announced on November 16, 2021), Defendants named a NYCHA Law Department Appeals Division lawyer, Laura Bellrose, a woman who is in her thirties and had no experience in Housing Court, as Chief of the Landlord/Tenant Division, with all attorneys and support staff who previously reported to Mr. Forrest now reporting to her.  Mr. Mordi was not apprised of Mr. Forrest's replacement until the official announcement was made. Thus, Mr. Forrest, who had been practicing law for 33 years, including 20 years with NYCHA,

was replaced as Chief, first on an interim basis with the much younger and inexperienced Ms. Roth and, ultimately, with the even younger and less experienced Ms. Bellrose.

24.      Ms. Bellrose contacted Mr. Forrest on numerous occasions with basic substantive landlord/tenant questions because of her lack of knowledge and experience.  By way of example, Ms. Bellrose sent Mr. Forrest a "Teams" chat asking "[w]hat is your understanding of the term rent demand?"  The term is a basic, rudimentary legal concept in the Landlord/Tenant Division. Mr. Forrest assisted as well as he could, particularly given the anticipated January 15, 2022 expiration of the pandemic-related moratorium on evictions.

25.      While this egregious course of unlawful age-based and gender-based treatment of Mr. Forrest was in its early stages, Mr. Forrest started weekly therapy on October 7, 2021 and it continues to this day, with a psychologist to address Plaintiff's very real concern that he was being stripped of many of the responsibilities and duties that he had otherwise performed at such a high level for the entirety of his professional career as a public servant without even being given an Instructional and/or Counseling Memorandum.  Mr. Forrest rightfully understood that he was being marginalized by NYCHA's OGC, including by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein, and frozen out of any meaningful participation in executive-level decision-making, and replaced by younger, female lawyers.  No explanation was ever provided to him.

26.      Meanwhile, Ms. Stein and Mr. Rohde simply ignored the plan Mr. Forrest submitted on September 30, 2021 at their behest, which contained a number of proposals, including but not limited to procedures for enforcement of tenant issues with NYCHA as the landlord, and eviction procedures that otherwise had been on hold during the pendency of the Covid-19 pandemic.

27.     Instead, even though Mr. Rohde and Ms. Stein had little to no understanding of landlord/tenant processes and procedures, and Mr. Forrest's replacements as Chief of the Landlord/Tenant Division (first, the much younger female Ms. Roth as Interim Chief and then the permanent appointment of the much younger Ms. Bellrose) also were unversed in landlord/tenant matters, NYCHA's OGC, under the direction and control of Ms. Bova-Hiatt, effectuated these changes without having made any effort to understand or account for the legal process required in dealing with tenant issues.  Defendants' course of action thereafter reflected a continuing, brazen, and concerted process to end Mr. Forrest's employment.

28.     While stripped of all of his reports, with the exception of the part-time, inexperienced law school student intern newly hired in or about January 2022, Ms. Bova-Hiatt directed Ms. Stein and Mr. Rohde to assign Mr. Forrest with the task of planning and handling litigation on 900 holdover cases, many additional holdover cases that the OGC was not initially aware of, more than 100 commercial cases, over 92 warrant cases, and 26 so-called non-desirable cases, even though none of the lawyers in the Landlord/Tenant Division was handling any new cases since no new cases had been started since the beginning of the COVID pandemic. This staggering job of single-handedly developing a litigation plan for and handling more than 1,100 lawsuits utterly disregarded the significant procedural, logistical, and legal challenges facing the process (including, but not limited to, the necessity of demonstrating rent owed in order to prioritize cases and non-rent related documentation from developments which was not being provided).  Mr. Forrest raised these issues, and others, in his weekly status meetings and communicated the challenges while repeatedly requesting that more resources be made available to him.  His pleas were ignored.

29.     Even though Ms. Bellrose's Landlord/Tenant Division was not commencing any new non-payment eviction proceedings (and, as of the date of filing of this Complaint, still had not commenced any such proceedings) and merely a few holdover cases, and Defendants had denied Mr. Forrest's request for additional support to enable him to move forward with the 1,100+ cases assigned to him, Defendants decided to punish Mr. Forrest for his purported failure. Thus, on February 11, 2022, Ms. Stein and Mr. Rohde met with Mr. Forrest and issued him a "Counseling Memo for Unsatisfactory Work Performance," the first counseling memorandum Mr. Forrest had received in his nearly twenty years of employment by NYCHA. Tellingly, Mr. Forrest's direct supervisors, were not consulted or in any way involved in either and were expressly excluded from that meeting.  Most telling of all is that Sam Mordi, the Deputy General Counsel (who, with 30 years of NYCHA employment, was the most senior attorney in NYCHA's Law Department but nevertheless was stripped of his power and authority with the creation of the OGC), and Mr. Forrest's direct supervisor for almost 20 years, did not give Plaintiff this or any other Instructional or Counseling Memorandum, or, indeed, any other criticism of Mr. Forrest's consistently excellent work.

30.     Prior to that February 11, 2022 Memorandum, NYCHA, including Ms. Stein and Mr. Rohde, had provided no notice of any kind regarding potential performance issues to Mr. Forrest, much less any counseling, instructional memorandum, or any process of incremental escalation.  In fact, no other meetings took place between Mr. Rohde, Ms. Stein and Mr. Forrest concerning any alleged performance issues that may have existed.  Ms. Roth was the "Chief of Landlord/Tenant Transformation" and purportedly was responsible for developing a transformation plan for the Landlord/Tenant Division, including a plan to revamp the division,

*i.e.* bringing new holdover cases.  Nevertheless, NYCHA held the older, male Mr. Forrest solely responsible both for allegedly failing to develop the very plan he had in fact developed and provided to Ms. Stein and Mr. Rohde on September 30, 2021, and for the very division that had been taken from his purview, leaving areas of responsibility in an extremely confused, vague, and ambiguous state following his removal as Chief and Defendants' failure to provide him adequate support.

31.     That five-page February 11, 2022 memorandum was a demonstrably false compilation of fabricated "failures" by Mr. Forrest in the face of evidence that strikingly establishes the contrary.  For example, NYCHA accused Mr. Forrest of failing to proceed on 92 potential cases with issued warrants.  However, courts had issued warrants (as opposed to warrants having been requested) on only 10 of the cases – an issued warrant being a necessary pre-condition to evicting an occupant.  Mr. Forrest informed NYCHA of this state of affairs but the facts were ignored in the memorandum.  Similarly, NYCHA never set a consistent deadline for Mr. Forrest to produce a draft motion, and it is in possession of the emails demonstrating both this salient fact, which contradicts Defendants' false allegations in the memorandum, and the fact that he did, in fact, provide his superiors with a draft motion (in a format that had always been deemed acceptable by Mr. Mordi and, of equal importance, by Housing Court) within approximately a week of being requested to do so.

32.     The counseling memorandum is also notably devoid of any mechanism for Mr. Forrest to undertake any corrective action, another indication that the memorandum was merely a fabricated criticism.  All demonstrative evidence that Mr. Forrest had indeed moved forward in implementing his September 2021 plan was ignored by NYCHA.  Ms. Bova-Hiatt, Mr. Rohde,

-14-

and Ms. Stein expressly excluded Mr. Forrest's immediate supervisors from the February 2022 meeting and the accompanying counseling memorandum is stark evidence of a campaign to discard Mr. Forrest without even a scintilla of input from those NYCHA direct supervisors most cognizant of his actual work performance.  In light of the falsehoods contained in the memorandum, as well as Defendants' continuing course of disparate treatment against Plaintiff, Mr. Forrest complained about the hostile work environment he had been forced to endure and NYCHA's discriminatory treatment of him as an older, male supervisory employee.  The conclusion and directive of the memorandum stated:

> The above actions demonstrate that you failed to undertake a fundamental job responsibility.
>
> Due to the serious and continuing nature of your failures to comply with management's directions, as stated above, you are advised that you may be subject to additional disciplinary action up to and including termination of your employment.

33.    The false and fabricated conclusion to the February 11, 2022 memorandum is exemplified by the fact that, as Mr. Forrest learned weeks later, the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment had already been made, expressly excluding Mr. Forrest's direct supervisors and without providing Mr. Forrest – after 20 dedicated years of public service at NYCHA and his long tenure as a Chief – any opportunity at all to address the falsehoods and inaccuracies contained in the memorandum (or correct them, were there any basis of fact to the criticisms, which there was not).

34.    In fact, NYCHA asserts that the decision to terminate Mr. Forrest's employment was made <u>before</u> the February 11, 2022 meeting and <u>before</u> the memorandum was even written, let alone issued to him so that he could, one presumes, take corrective steps in response.  This, of course, raises questions about the veracity of the memorandum's contents and purpose.

Moreover, despite not only Mr. Forrest's stating to NYCHA at the February 11, 2022 meeting that the memorandum was full of inaccuracies; his legal counsel's February 22, 2022 letter to NYCHA, which asserted ADEA and Title VII violations (as well as violations of the corresponding New York State and New York City laws); his legal counsel's discussions with NYCHA's outside counsel noting that the memorandum was filled with factual inaccuracies; and his legal counsel's offer to share a comprehensive point-by-point analysis, with reference to the actual, demonstrable facts, of the mistakes and fabrications contained in the memorandum (an offer made on March 2, 2022 in an attempt to avoid litigation and to resolve the parties' differences), Defendants knowingly and intentionally ignored each and every entreaty to correct the record.

35.     Instead, two days later, on March 4, 2022, one business day after Mr. Forrest filed an internal NYCHA Department of Equal Opportunity Complaint and without any attempt to investigate or review the countervailing evidence prepared by Mr. Forrest – which dispositively demonstrated that he had and was fulfilling all of his job responsibilities and that he had complied with each and every request made of Mr. Forrest by Ms. Bova-Hiatt, Mr. Rohde, and Ms. Stein – Mr. Rohde and Ms. Stein contacted Mr. Forrest's personal email account and personal phone number and directed Mr. Forrest to participate in a phone conversation on a day NYCHA had previously approved as a vacation day for Plaintiff. This conversation ultimately took place on March 4, 2022.  Again expressly excluding his direct supervisors, Defendants then informed Mr. Forrest that he was suspended until April 2, 2022 and that his employment would be terminated on that date.

36.     Despite the evidence provided by Defendants to Mr. Forrest's counsel that the

decision to terminate purportedly had been made before the February 11, 2022 memorandum to and meeting with Mr. Forrest (which memorandum was likely drafted for the improper purpose of creating a paper trail to attempt to mitigate NYCHA's obvious retaliation against Mr. Forrest for complaining about NYCHA's unlawful and discriminatory conduct), the facts are stark:  the termination decision was not communicated to Mr. Forrest until March 4, 2022, and only (a) after Mr. Forrest previously objected to the discrimination and hostile work environment, (b) after Mr. Forrest's counsel's February 22, 2022 letter asserting NYCHA's unlawful and discriminatory conduct, (c) after counsel to Mr. Forrest offered to share a detailed refutation of the February 11, 2022 counseling memorandum, (d) one business day after Mr. Forrest filed a complaint with NYCHA's Office of Equal Opportunity after work hours on March 2, 2022, and (e) after Ms. Stein's February 11, 2022 warning to Mr. Forrest that he "may be subject to additional disciplinary action," but no further action had been taken.  In these circumstances, Defendants' decision to refuse to review the countervailing evidence (despite being offered the opportunity) or to conduct any sort of investigation into the allegations of discrimination, but instead baldly to move forward with the termination constitutes brazen and brutal retaliation in response to overt averments of Defendants' unlawful and discriminatory conduct as well as continuing discrimination.

      37.     Thereafter, NYCHA's Human Resources Department informed Mr. Forrest that he was required to submit the requisite documents in order to receive pension benefits, health insurance benefits and unused vacation days.  After Mr. Forrest did so, and after his termination occurred (Saturday, April 2, 2022), he received a letter by mail from NYCHA (mailed on Friday, April 1, 2022, and received on Monday, April 4, 2022), absurdly claiming that NYCHA revoked

the termination because "we are in receipt of your Retirement Option Form." This ploy is pure gamesmanship, and otherwise is a deceitful and deceptive attempt by NYCHA to induce Mr. Forrest to submit his retirement papers in order to claim that Defendants had not unilaterally terminated Plaintiff's employment. It is beyond cavil that had Mr. Forrest not followed the guidance of NYCHA's Human Resources Department to take necessary actions to preserve his long-earned benefits, no similar letter revoking his discharge would have been forthcoming. In other words, Defendants can attempt to put lipstick on its termination of Mr. Forrest, but his employment by NYCHA was ending no later than April 2, 2022 no matter what.

## COUNT I

### (Discrimination and Retaliation in Violation of ADEA)
### (against NYCHA)

38.     Plaintiff repeats and realleges paragraphs 1 through 37 as if fully set forth herein.

39.     NYCHA was at all relevant times herein Plaintiff's "employer," and Mr. Forrest was NYCHA's "employee," as those terms are defined under the ADEA, 29 U.S.C. § 630.

40.     NYCHA, through its agents and representatives, including managerial or supervisory employees, classified and/or stereotyped Plaintiff because of and/or but for his age in a manner to affect adversely Mr. Forrest's status as an employee, and otherwise denied Plaintiff equal employment opportunities, in violation of the ADEA, 29 U.S.C. § 623(a).

41.     NYCHA's differential treatment of Mr. Forrest because of his age, including, but not limited to, its institution of a hostile work environment; its elimination of direct reports to Mr. Forrest; its replacement of Mr. Forrest with younger and inexperienced attorneys; its proffer of a wholly inaccurate and factually fabricated counseling memorandum and warning; its failure to consider or in any way investigate Mr. Forrest's complaints of discrimination or the false and

-18-

pretextual memo; and its discipline, suspension, and, ultimately, its termination of Mr. Forrest's employment all constitute discrimination against Mr. Forrest by denying him equal terms and conditions of employment, and limited, stereotyped, or classified him to deny him equal treatment and employment opportunities, thereby applying disparate terms and conditions of employment to him, because of and/or but for his age, in violation of the ADEA, 29 U.S.C. § 623(a).

42.     The retaliatory conduct and actions taken by NYCHA in response to, and as a result of, Plaintiff's expressed opposition to NYCHA's discriminatory acts and conduct were causally connected to Mr. Forrest's protected activity, namely, protesting, addressing and opposing the age-based discrimination committed against him.

43.     NYCHA engaged in a decidedly discriminatory path against Mr. Forrest and then, in open and egregious fashion, retaliated against Plaintiff after he complained of discrimination himself on February 11, 2022, after he complained through his counsel about that alleged course of discriminatory treatment, after he filed an internal complaint of discrimination with NYCHA's Office of Equal Opportunity, and by NYCHA's refusal to investigate or even review the evidence proffered by Plaintiff that gutted and disproved the allegations of improper performance leveled by NYCHA against Mr. Forrest.

44.     Although NYCHA can assert that it made the decision to terminate Mr. Forrest's employment before the February 11, 2022 memorandum, its failure to reconsider its purported decision to terminate constitutes retaliation (a) in light of its brazen refusal to even consider dispositive evidence disproving the fabricated performance issues; (b) the assertions by Mr. Forrest of discriminatory treatment; and (c) the very language of the February 11, 2022

memorandum itself, in which NYCHA advised Mr. Forrest that he "may be subject to additional disciplinary action up to and including termination of your employment." But the February 11, 2022 memorandum's "Conclusion and Direction" and its failure to inform Mr. Forrest of his discharge until March 4, 2022, both directly contradict any assertion NYCHA can make that a decision to terminate already had been made, and further demonstrates that the decision to suspend and terminate Mr. Forrest from his employment was a response to the aforementioned opposition to NYCHA's discriminatory treatment of him.  As a consequence, NYCHA unlawfully retaliated against Plaintiff, in violation of 29 U.S.C. § 623(d).

45.     By its treatment of Mr. Forrest through its supervisors and/or managers, agents and representatives, NYCHA has severely damaged Plaintiff.  In addition to back pay for period since his termination from employment, compensatory damages for the mental anguish, pain and suffering, and humiliation he has incurred, and front pay and all attendant benefits, including pension accrual, Mr. Forrest also seeks all other appropriate damages, including, but not limited to, liquidated damages and reasonable attorneys' fees and costs.

46.     NYCHA's conduct was willful in that it knew that the aforementioned conduct violated the ADEA or NYCHA showed a reckless disregard that its conduct violated Plaintiff's rights under the ADEA.

## COUNT II

**(Discrimination and Retaliation in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York) (against all Defendants)**

47.     Plaintiff repeats and realleges paragraphs 1 through 46 as if fully set forth herein.

48.     Defendants were at all times herein Plaintiff's "employer or an employee or agent thereof" as that term is defined under Title 8 of the Administrative Code of the City of New York, and Plaintiff was at all relevant times herein Defendants' employee or an aggrieved person as those terms are defined under Title 8 of the Administrative Code of the City of New York.

49.     Defendants, themselves or through their agents, principals, representatives, or employees, including supervisory or managerial employees, classified and/or stereotyped Plaintiff because of his age and/or his gender in a manner to affect adversely Plaintiff's status as an employee, and otherwise to deny Plaintiff equal opportunities for employment, in violation of § 8-107 of the Administrative Code of the City of New York.

50.     Defendants' counseling, discipline, suspension, and termination of Mr. Forrest's employment discriminated against him by denying him equal terms and conditions of employment, because of his age and/or his gender, in violation of § 8-107 of the Administrative Code of the City of New York.

51.     Defendants' age- and/or gender-based decision-making process, and age- and/or gender-based perspective that favored employees or individuals younger than Mr. Forrest and/or who were not men, discriminated against Plaintiff by denying him equal terms and conditions of employment, and limited or classified Mr. Forrest, because of his age and/or gender, in violation of § 8-107 of the Administrative Code of the City of New York.

52.     Defendants' acts and omissions were committed with malice toward Plaintiff or with a reckless indifference to Plaintiff's rights under Title 8 of the Administrative Code of the City of New York.

53.     From on or about February 11, 2022 and thereafter, upon Mr. Forrest's opposition

to and complaints about Defendants' discriminatory treatment of him, followed by his counsel's letter to, *inter alia*, Ms. Bova-Hiatt, detailing the discriminatory treatment of Mr. Forrest, Defendants' refusal to review evidence that their counseling and discipline of Mr. Forrest was improper and contradicted by the facts, and Mr. Forrest's submission of an internal complaint to NYCHA's Office of Equal Opportunity, Defendants, themselves or through their managers, supervisors, principals, agents, employees and/or representatives, retaliated against Mr. Forrest in violation of § 8-107(7) of the Administrative Code of the City of New York by suspending him from employment and terminating him from his employment.

54.     The retaliatory conduct and actions taken by Defendants were causally connected to Mr. Forrest's protected activity, namely, protesting or opposing the gender- and age-based discrimination committed against him, are reasonably likely to deter a person from engaging in protected activity.

55.     Defendants' discriminatory and retaliatory treatment of Mr. Forrest had an adverse and severe impact upon Mr. Forrest's position, career and well-being.  Defendants not only caused Mr. Forrest the loss of opportunities to work, and his pay and benefits, including the accrual of pension benefits, but emotional distress, and pain and suffering, including mental anguish and distress.

## <u>COUNT III</u>

**(Aiding and Abetting Discrimination and Retaliation in Violation of the New York City Human Rights Law, Title 8 of the Administrative Code of the City of New York) (against Defendants Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein)**

56.     Plaintiff repeats and realleges paragraphs 1 through 55 as if fully set forth herein.

57.     At all times relevant to this action, Plaintiff was an "employee" of NYCHA and Defendants Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein aided, abetted, incited, compelled or coerced discriminatory treatment and retaliation against Mr. Forrest that is prohibited by New York City Administrative Code § 8-107(1) and (7), in violation of New York City Administrative Code § 8-107(6).

### COUNT IV

**(Violation of New York Executive Law Section 296(1) and (7))**
**(against NYCHA)**

58.     Plaintiff repeats and realleges paragraphs 1 through 57 as if fully set forth herein.

59.     At all times relevant to this action, Mr. Forrest was an "employee" and NYCHA was the "employer" as defined under Section 292 of the New York Executive Law.

60.     NYCHA, through its agents and representatives, including managerial or supervisory employees, classified and/or stereotyped Plaintiff because of his age and/or gender in a manner to affect adversely Mr. Forrest's status as an employee, and otherwise denied Plaintiff equal opportunities for employment, in violation of the New York State Human Rights Law, Section 296(1) of the New York Executive Law.

61.     By its differential treatment of Mr. Forrest because of his age and/or gender, including, but not limited to, its replacement of Mr. Forrest with inexperienced younger, female attorneys, its counseling, warnings, discipline, suspension and, ultimately, its termination of Mr. Forrest's employment, NYCHA discriminated against Mr. Forrest by denying him equal terms and conditions of employment, and limited Plaintiff because of his age and/or gender, in violation of the New York State Human Rights Law, Section 296(1) of the New York Executive Law.

62.     The retaliatory conduct and actions taken by NYCHA in response to, and as a result of, Plaintiff's expressed opposition to NYCHA's discriminatory acts and conduct were causally connected to Mr. Forrest's protected activity, namely, complaining about, protesting, addressing and opposing the age- and gender-based discrimination committed against him.

63.     NYCHA engaged in a decidedly discriminatory path against Mr. Forrest and then, in open and egregious fashion, retaliated against Plaintiff after he complained of discrimination himself on February 11, 2022, after he complained through his counsel about that alleged course of discriminatory treatment, after he filed an internal complaint of discrimination with NYCHA's Office of Equal Opportunity, and by NYCHA's refusal to review the evidence proffered by Plaintiff that undermined and disproved the allegations of improper performance leveled by NYCHA against Mr. Forrest.  Although NYCHA has asserted that language contained in an internal email suggests that it made the decision to terminate Mr. Forrest's employment before the February 11, 2022 memorandum, its failure to reconsider its purported decision to terminate constitutes retaliation (a) in light of its brazen refusal to investigate or even consider dispositive evidence disproving the fabricated performance issues; (b) the assertions by Mr. Forrest of discriminatory treatment; and (c) the very language of the February 11, 2022 memorandum itself, in which NYCHA advised Mr. Forrest that he "may be subject to additional disciplinary action up to and including termination of your employment."  The February 11, 2022 memorandum's "Conclusion and Direction", as well as its failure to take action against Mr. Forrest until March 4, 2022, contradicts any assertion NYCHA can make that a decision to terminate already had been made, and further demonstrates that the decision to suspend and terminate Mr. Forrest from his employment was a response to the aforementioned opposition to

NYCHA's discriminatory treatment of him.  As a consequence, NYCHA unlawfully retaliated against Plaintiff, in violation of the New York State Human Rights Law, Section 296(7) of the New York Executive Law.

64.      By its treatment of Mr. Forrest through its supervisors and/or managers, agents and representatives, NYCHA has severely damaged Plaintiff.  In addition to back pay for period since his termination from employment, compensatory damages for the mental anguish, pain and suffering, and humiliation he has incurred, and front pay and all attendant benefits, including pension accrual, Mr. Forrest also seeks all other appropriate damages, including, but not limited to, reasonable attorneys' fees and costs.

## COUNT V

### (Violation of New York Executive Law Section 296(6))
### (against Defendants Ms. Bova-Hiatt, Mr. Rohde, and Ms. Stein)

65.      Plaintiff repeats and realleges paragraphs 1 through 64 as if fully set forth herein.

66.      At all times relevant to this action, Plaintiff was an "employee" of NYCHA and Defendants Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein aided, abetted, incited, compelled or coerced discriminatory treatment and retaliation against Mr. Forrest that is prohibited by New York State Human Rights Law, in violation of New York State Executive Law Sections 296(1), (6) and (7).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

A.      that the Court enter judgment for Plaintiff against NYCHA in an amount to be proved at trial:

(1) for back pay, including wages and any and all other benefits that would have been received by Plaintiff from NYCHA but for his discharge and other unequal treatment because of and/or but for his age and retaliation, in violation of the ADEA, together with all of the other rights, privileges, and benefits appurtenant thereto, including, but not limited to, liquidated damages for NYCHA's willful violation of the ADEA;

(2) for front pay, including wages and any and all other benefits that would be received by Plaintiff from NYCHA but for his discharge and other unequal treatment because of and/or but for his age and retaliation, in violation of the ADEA, until the date of Plaintiff's normal retirement age, together with all of the other rights, privileges, and benefits appurtenant thereto; and

(3) for such general, special, compensatory, and punitive damages, including damages for Plaintiff's pain and suffering, humiliation, and mental anguish, reimbursement of medical bills, as authorized under the ADEA, credit for pension contributions and pension accrual until the age of 68, and all prerequisites of employment (including, but not limited to, paid time off (including 100% of unpaid yet accrued vacation days in excess of 120 days and the denial of bonus days off), retraction (and removal from personnel files/records) of February 11, 2022 Counseling Memorandum, decision to terminate and do not rehire directive, together with such other relief as to this Court against NYCHA may seem just and proper, including, but not limited to, costs and disbursements, and attorneys' fees;

B.     that the Court enter judgment for Plaintiff against Defendants NYCHA, Ms. Bova-Hiatt, Mr. Rohde, and Ms. Stein, jointly and severally, in an amount to be proved at trial:

(1) for back pay, including wages and any and all other benefits that would have been received by Plaintiff from Defendants but for his discharge and other unequal treatment because of his age and/or gender, and retaliation, in violation of the New York City Human Rights Law, § 8-107 of the Administrative Code of the City of New York, together with all of the other rights, privileges, and benefits appurtenant thereto;

(2) for front pay, including wages and any and all other benefits that would be received by Plaintiff from Defendants but for his discharge because of his age and/or gender, and retaliation, in violation of § 8-107 of the Administrative Code of the City of New York, until the date of Plaintiff's normal retirement age, together with all of the other rights, privileges, and benefits appurtenant thereto; and

(3) for such general, special, compensatory, and punitive damages, including damages for Plaintiff's pain and suffering, humiliation, and mental anguish, reimbursement of medical bills, as authorized under the New York City Human Rights Law, credit for pension contributions and pension accrual until the age of 68, and all prerequisites of employment (including, but not limited to, paid time off (including 100% of unpaid yet accrued vacation days in excess of 120 days and the denial of bonus days off), retraction (and removal from personnel files/records) of February 11, 2022 Counseling Memorandum, decision to terminate and do not rehire directive, together with such other relief as to this Court against Defendants may seem just and proper, including, but not limited to, costs and disbursements, and attorneys' fees;

C.     that the Court enter judgment for Plaintiff against Defendants NYCHA, Ms. Bova-Hiatt, Mr. Rohde, and Ms. Stein, jointly and severally, in an amount to be proved at trial:

(1) for back pay, including wages and any and all other benefits that would have been received by Plaintiff from Defendants but for his discharge and other unequal treatment because of his age and/or gender, and retaliation, in violation of the New York State Human Rights Law, Section 296 of the New York Executive Law, together with all of the other rights, privileges, and benefits appurtenant thereto;

(2) for front pay, including wages and any and all other benefits that would be received by Plaintiff from Defendants but for his discharge because of his age and/or gender, and retaliation, in violation of the New York State Human Rights Law, Section 296 of the New York Executive Law, until the date of Plaintiff's normal retirement age, together with all of the other rights, privileges, and benefits appurtenant thereto; and

(3) for such general, special, compensatory, and punitive damages, including damages for Plaintiff's pain and suffering, humiliation, and mental anguish, reimbursement of medical bills, as authorized under the New York State Human Rights Law, credit for pension contributions and pension accrual until the age of 68, and all prerequisites of employment (including, but not limited to, paid time off (including 100% of unpaid yet accrued vacation days in excess of 120 days and the denial of bonus days off), retraction (and removal from personnel files/records) of February 11, 2022 Counseling Memorandum, decision to terminate and do not rehire directive, together with such other relief as to this Court against Defendants may seem just and proper, including, but not limited to, costs and disbursements, and attorneys' fees;

D.      for such other and further relief as the Court deems necessary and proper.

## **Demand for Trial by Jury**

Plaintiff hereby demands, pursuant to Fed.R.Civ.P. 38(b), a trial by jury in this action.

Dated:  Brooklyn, New York        LAW OFFICES – THOMAS S. ROSENTHAL
        July 30, 2022

      /s/ thomas s. rosenthal_____
      BY:  Thomas S. Rosenthal

      45 Main Street, Suite 1030
      Brooklyn, New York  11201
      212.582.6651
      Email: trosenthal@rosenthal-law.com

      Edward Hernstadt, Esq.
      Hernstadt Atlas PLLC
      45 Main Street, Suite 1030
      Brooklyn, New York  11201
      212.809.2501
      Email:  ed@heatlaw.com

      Attorneys for Tracy L. Forrest