UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACY L. FORREST,<br><br>  Plaintiff,<br><br>  v.<br><br>NEW YORK CITY HOUSING AUTHORITY, LISA BOVA-HIATT, DAVID ROHDE, and HALEY STEIN,<br><br>  Defendants. | Case No. 1:22-CV-06480-JLR |

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS EACH OF THE RETALIATION CLAIMS IN THE COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

VENABLE LLP
Nicholas M. Reiter
Taylor A. Bleistein
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
212.370.6296
nmreiter@venable.com
tableistein@venable.com

*Attorneys for Defendants*

## **TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| I. | PRELIMINARY STATEMENT | 1 |
| II. | FACTUAL BACKGROUND | 1 |
| | A.  NYCHA's October 25, 2021 Meeting with Plaintiff | 2 |
| | B.  NYCHA's Decision to Separate Plaintiff from Employment | 3 |
| | C.  Plaintiff's First Alleged Discrimination Complaint to NYCHA | 4 |
| | D.  NYCHA's Separation Meeting with Plaintiff | 4 |
| III. | APPLICABLE LEGAL STANDARDS | 5 |
| | A.  Motion to Dismiss | 5 |
| | B.  Retaliation Claims | 6 |
| IV. | ARGUMENT | 6 |
| | Point 1:  Plaintiff Concedes that Defendants Decided to Terminate His Employment Before His First Alleged Protected Activity | 6 |
| | Point 2:  Defendants' Refusal to Reconsider its Termination Decision is Not Actionable | 8 |
| | Point 3:  When NYCHA Disclosed its Termination Decision to Plaintiff is Irrelevant | 10 |
| | Point 4:  The Court May Consider Mr. Rohde's February 10, 2022 E-Mail | 12 |
| V. | CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................................5

*Bernheim v. Litt*,
    79 F.3d 318 (2d Cir. 1996) .........................................................................................................6, 7

*Cohen v. Capital One Funding, LLC*,
    489 F. Supp. 3d 33 (E.D.N.Y. 2020) ..........................................................................................12

*Dooley v. Jetblue Airways Corp.*,
    No. 14-CV-4432 (JMF), 2015 WL 1514955 (S.D.N.Y. Apr. 1, 2015) ......................8, 9, 10, 11

*Doroz v. Columbia Place Assocs. LLC*,
    No. 6:13-CV-1135, 2014 WL 5475289 (N.D.N.Y. Oct. 29, 2014) ...............................................7

*Global Network Comm's, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) ...................................................................................................13, 14

*Holmes v. Grubman*,
    568 F.3d 329 (2d Cir. 2009) ..........................................................................................................5

*Int'l Audiotext Network, Inc. v. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995) ...................................................................................................2, 3, 12

*Lebowitz v. N.Y. City Dep't of Educ.*,
    407 F. Supp. 3d 158 (E.D.N.Y. 2017) ..........................................................................................6

*Maitland v. Konica Minolta Business Solutions U.S.A. Inc.*,
    No. 09-CV-1675 (JMA) (AKT), 2016 WL 304884 (E.D.N.Y. Jan. 25, 2015) ..............8, 10, 11

*McJunkin v. Suffolk County Civil Service*,
    No. 13-CV-5045 (JS) (WDW), 2014 WL 3490720 (E.D.N.Y. Jul. 10, 2014) .......................7, 11

*Pesserillo v. Nat'l Grid*,
    78 F. Supp. 3d 551 (E.D.N.Y. 2015) ....................................................................................13, 14

*Pinero v. Long Island State Veterans Home*,
    375 F. Supp. 2d 162 (E.D.N.Y. 2005) .......................................................................6, 7, 8, 9, 10, 11

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000)..........................................................................................2, 3, 12

*Tse v. New York Univ.*,
    No. 10 Civ. 7207 (DAB), 2013 WL 5288848 (E.D.N.Y. Sept. 19, 2013)...........................8, 11

*Zoulas v. N.Y. City Dep't of Educ.*,
    400 F. Supp. 3d 25 (S.D.N.Y. 2019).........................................................................................6

Defendants New York City Housing Authority ("NYCHA"), Lisa Bova-Hiatt ("Ms. Bova-Hiatt"), David Rohde ("Mr. Rohde"), and Haley Stein ("Ms. Stein") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss each of the retaliation claims in the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## I.     PRELIMINARY STATEMENT

This case arises from NYCHA's decision to terminate the employment of a poorly performing employee. Plaintiff Tracy L. Forrest ("Plaintiff") alleges that Defendants fired him because of his gender and age and in retaliation for his internal complaints about gender and age discrimination. Defendants dispute the allegations and aver that they decided to terminate Plaintiff's employment because of his poor job performance.

That dispute, however, is not at issue in this motion. Discovery is not needed to establish whether Plaintiff has viable *retaliation* claims. Those claims fail as a matter of law. Plaintiff concedes that NYCHA decided to terminate his employment *before* his first alleged complaint of discrimination. *See* Compl. ¶ 33 (admitting that Defendants decided to terminate Plaintiff's employment prior to February 11, 2022 – the date Plaintiff alleges he first complained about alleged discrimination). An employer cannot illegally retaliate against an employee before the employee first engages in a protected activity. No amount of discovery can change that. Therefore, the retaliation claims must be dismissed.

## II.     FACTUAL BACKGROUND[1]

NYCHA is a public benefit corporation organized under the laws of New York. Compl. ¶ 5. NYCHA is one of the nation's largest public housing organizations, operating more than 340

---

[1] Defendants assume the truth of the well-pleaded facts alleged in the Complaint for the purposes of this motion only. Nothing herein should be construed as an admission as to any of the allegations in the Complaint. The facts recited

public housing developments in New York City. *Id.* On or about April 1, 2002, NYCHA hired Plaintiff, who is male, as an attorney in its Law Department. *Id*. ¶¶ 4, 12, 13.

In or around February 2020, NYCHA appointed Ms. Bova-Hiatt as its Executive Vice President for Legal Affairs and General Counsel. *Id*. ¶¶ 6, 16. At all times relevant to the Complaint, NYCHA has employed Mr. Rohde as its Managing Attorney and Senior Vice-President for Legal Affairs and Ms. Stein as its Special Counsel to the General Counsel. *Id*. ¶¶ 7-8. Plaintiff alleges that Ms. Bova-Hiatt, Mr. Rohde, and Ms. Stein were each his "employers" within the meaning of the New York City Human Rights Law by virtue of their roles as his supervisors and their involvement in the decision to terminate his employment. *Id*. ¶¶ 6-8.

### A. NYCHA's October 25, 2021 Meeting with Plaintiff

In September 2021, Mr. Rohde and Ms. Stein directed Plaintiff to create an action plan for handling the substantial backlog of pending cases assigned to NYCHA's Landlord/Tenant Division – the Division within the Law Department to which Plaintiff was assigned. *Id*. ¶ 21. On October 25, 2021, Mr. Rohde and Ms. Stein met with Plaintiff to discuss his proposed action plan. *Id*. ¶ 22. Mr. Rohde and Ms. Stein were critical of Plaintiff's action plan during this meeting. *Id*. Based upon her dissatisfaction with Plaintiff's action plan, Ms. Stein reportedly expressed her doubts about Plaintiff's continued employment at NYCHA, allegedly telling Plaintiff "we are done with you." *Id*. At the end of the October 25, 2021 meeting, Mr. Rohde and Ms. Stein informed Plaintiff that NYCHA intended to install a new Chief of the Landlord/Tenant Division. *Id*.

---

herein are taken from the Complaint and documents that are either incorporated by reference within the Complaint or integral to Plaintiff's claims. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

### B. NYCHA's Decision to Separate Plaintiff from Employment

Following the October 25, 2021 meeting, NYCHA evaluated Plaintiff's job performance and considered whether to continue his employment. On February 10, 2022, Mr. Rohde sent an e-mail to Ms. Bova-Hiatt, Ms. Stein, and other NYCHA managers regarding NYCHA's decision to terminate Plaintiff's employment. *See* Ex. A to Declaration of Nicholas M. Reiter ("Reiter Decl.").[2] Mr. Rohde's February 10, 2022 e-mail stated, in relevant part:

> In order not to be rushing a process that requires careful thought and coordination, I have adjourned *the separation meeting* with Mr. Forrest to the afternoon of 25 February. The adjourned date should give us sufficient time to finalize the separation agreement to everyone's satisfaction, serve the counseling memo *in advance of the separation meeting* (if so directed by HR), and align schedules in the L&T Division to have managerial coverage/manage any negative impacts *in the wake of Mr. Forrest's separation.*

*Id*. (emphasis added).

As set forth in Mr. Rohde's email, NYCHA postponed Plaintiff's separation meeting in order to afford NYCHA more time to finalize Plaintiff's separation agreement. *Id*. Mr. Rohde also described NYCHA's plan to issue Plaintiff a counseling memorandum – in advance of the separation meeting – regarding Plaintiff's unsatisfactory job performance. *Id*. At the end of the e-mail, Mr. Rohde commented upon the need to arrange staffing coverage as a result of Plaintiff's then-forthcoming separation from NYCHA. *Id*. As set forth below, and as conceded in the Complaint (*see* Compl. ¶ 33), Mr. Rohde's e-mail establishes that NYCHA had already decided to terminate Plaintiff's employment no later than February 10, 2022.

---

[2] As discussed further herein, Mr. Rohde's e-mail may be considered when reviewing this motion because the e-mail is referenced within the Complaint (*see* Compl. ¶¶ 33, 36, 63) and is integral to the viability of Plaintiff's retaliation claims. *See Rothman*, 220 F.3d at 88; *Int'l Audiotext Network, Inc.*, 62 F.3d at 72.

### C. Plaintiff's First Alleged Discrimination Complaint to NYCHA

On February 11, 2022, NYCHA issued Plaintiff a Counseling Memo for Unsatisfactory Work Performance (the "Counseling Memo"). Compl. ¶ 29. Plaintiff took exception to the critiques of his job performance described in the Counseling Memo. *Id*. ¶¶ 30-32. He claims that in light of the supposed "falsehoods" in the Counseling Memo, he "complained [to NYCHA] about the hostile work environment he had been forced to endure and NYCHA's discriminatory treatment of him as an older, male supervisory employee." *Id*. ¶ 32. Plaintiff does not allege to whom or how he supposedly complained to NYCHA on February 11, 2022. In any event, assuming the complaint was made, Plaintiff's February 11, 2022 complaint in response to the Counseling Memo is his first alleged complaint to NYCHA. *See id*. ¶ 43 (alleging NYCHA "retaliated against Plaintiff after he complained of discrimination himself on February 11, 2022). Therefore, the earliest he allegedly engaged in a protected activity is February 11, 2022 – one day *after* Mr. Rohde's above-referenced e-mail.

### D. NYCHA's Separation Meeting with Plaintiff

On March 4, 2022, after another postponement of the separation meeting due to Plaintiff's vacation schedule, NYCHA informed Plaintiff of its decision to terminate his employment. *Id*. ¶ 35. At that time, Plaintiff was less than one month away from reaching his 20-year employment anniversary on April 2, 2022. In order to allow Plaintiff to reach his 20-year anniversary, which helped him become eligible for better retirement benefits, NYCHA informed Plaintiff that he was suspended *with* pay from March 4, 2022 through April 2, 2022, at which time his termination of employment would become effective. *Id*.

On or about March 24, 2022, while on paid suspension, Plaintiff tendered his early retirement papers to NYCHA. Compl. ¶ 37. As a result of his retirement election, NYCHA

notified Plaintiff that it acknowledged his early retirement and, therefore, no longer intended on involuntarily terminating his employment effective April 2, 2022. *Id.* NYCHA does not deny that it previously decided to terminate Plaintiff's employment, and NYCHA agrees that Plaintiff would not have remained employed after April 2, 2002 had he not elected to retire beforehand. In any event, Plaintiff's employment ended on April 2, 2022. *Id*. He was 57 years old at that time. *Id*. ¶ 4.

### III.　APPLICABLE LEGAL STANDARDS

#### A. Motion to Dismiss

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To defeat the motion, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009). The facts alleged in the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim that is merely conceivable does not meet the plausibility standard. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly* 550 U.S. at 570. Whether a complaint

meets the plausibility threshold is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Retaliation Claims

The pleading requirements for Plaintiff's retaliation claims are well-established. To state a retaliation claim under the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), or the New York City Human Rights Law ("NYCHRL"), "a plaintiff must allege that (1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Zoulas v. N.Y. City Dep't of Educ.*, 400 F. Supp. 3d 25, 56-57 (S.D.N.Y. 2019) (citations omitted); *Lebowitz v. N.Y. City Dep't of Educ.*, 407 F. Supp. 3d 158, 177 (E.D.N.Y. 2017) (holding that the same ADEA pleading standards apply to retaliation claims under the NYSHRL and NYCHRL) (citations omitted).

### IV.   ARGUMENT

The facts recited above are not in dispute. They are taken from the Complaint and assumed true for purposes of this motion. Because Defendants decided to terminate Plaintiff's employment before his first alleged protected activity, Plaintiff cannot state a retaliatory discharge claim as a matter of law.

**Point 1:   Plaintiff Concedes that Defendants Decided to Terminate His Employment Before His First Alleged Protected Activity**

It is well-established that "[t]here can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity." *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) (granting Rule 12(b)(6) motion to dismiss retaliation claims) (citations omitted); *see also Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996) ("Clearly, [the plaintiff] may not base her claim of retaliation upon complained-of acts that

predated her speaking out…"); *McJunkin v. Suffolk County Civil Service*, No. 13-CV-5045 (JS)(WDW), 2014 WL 3490720, at *5 (E.D.N.Y. Jul. 10, 2014) (granting Rule 12(b)(6) motion to dismiss retaliation claims where first alleged protected activity occurred after the Defendants' termination of the plaintiff's employment) (citing *Pinero*, 375 F. Supp. 2d at 168); *Doroz v. Columbia Place Assocs. LLC*, No. 6:13-CV-1135, 2014 WL 5475289, at *7 (N.D.N.Y. Oct. 29, 2014) (same) (citing *Pinero*, 375 F. Supp. 2d at 168).

That rule is particularly relevant to this case. The Complaint is replete with admissions that Defendants considered and eventually decided to terminate Plaintiff's employment *before* his first alleged protected activity on February 11, 2022. First, Plaintiff alleges that Ms. Stein told him on October 25, 2021 that "we are done with you," thereby admitting that Defendants were at least mulling over Plaintiff's termination of employment at that time – approximately four months before Plaintiff's first alleged protected activity. *See* Compl. ¶ 22. Next, Plaintiff alleges that prior to receiving the Counseling Memo on February 11, 2022, Defendants were already engaged in "a continuing brazen, and concerted process to end [his] employment." *Id*. ¶ 27. A few paragraphs later in the Complaint, Plaintiff expressly concedes that, as of February 11, 2022, "the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment *had already been made*, . . ." *Id*. ¶ 33 (emphasis added).

In accordance with the cases cited above and common sense, these admissions, considered in tandem with Mr. Rohde's February 10, 2022 e-mail, are fatal to Plaintiff's retaliation claims. Defendants could not have unlawfully retaliated against Plaintiff because of his protected activities – the earliest of which he alleges occurred on February 11, 2022 – if they had already decided beforehand to terminate his employment. Accordingly, the retaliation claims should be dismissed.

**Point 2:** **<u>Defendants' Refusal to Reconsider its Termination Decision is Not Actionable</u>**

Plaintiff is aware of Mr. Rohde's February 10, 2022 e-mail and the obstacle it presents for his retaliation claims. Indeed, as discussed more fully below, Mr. Rohde's e-mail is the "evidence provided by Defendants" that is referenced in paragraph 36 of the Complaint and that was previously provided to Plaintiff's counsel before the filing of this action. *See* Compl. ¶ 36; Reiter Decl. ¶ 3.

To circumvent this obvious hurdle to his claim, Plaintiff alleges that NYCHA's "failure to reconsider its purported decision to terminate constitutes retaliation." *Id*. ¶ 63. This claim is not legally supportable. Courts routinely reject the "failure to reconsider" retaliation theory as a matter of law. *See, e.g., Pinero*, 375 F. Supp. 2d at 168 ("The failure to reevaluate the Plaintiff was not a 'materially adverse change,' rather it was an action that kept the status quo in place."); *Dooley v. Jetblue Airways Corp.*, No. 14-CV-4432 (JMF), 2015 WL 1514955, at *4 (S.D.N.Y. Apr. 1, 2015) ("Jetblue declined to reevaluate that termination in Plaintiff's appeal, but that does not qualify as an adverse employment action; instead, it was an action that kept the status quo in place.") (citing *Pinero*, 375 F. Supp. 2d at 168);[3] *Maitland v. Konica Minolta Business Solutions U.S.A. Inc.*, No. 09-CV-1675 (JMA) (AKT), 2016 WL 304884, at *12 (E.D.N.Y. Jan. 25, 2015) (dismissing retaliation claims where employer decided internally to select an employee for layoff one month prior to employee's first alleged protected activity); *Tse v. New York Univ.*, No. 10 Civ. 7207 (DAB), 2013 WL 5288848, at *17 (E.D.N.Y. Sept. 19, 2013) (dismissing retaliation claims where employer decided internally to terminate plaintiff's employment prior to first alleged protected activity).

---

[3] *Dooley* was affirmed in part and vacated in part. *See* 636 F. App'x 16 (2d Cir. 2015). Relevant to this motion, the dismissal of the retaliation claims was affirmed. *Id*. at 19.

In order to state a retaliation claim, Plaintiff needs more than an allegation that Defendants should have reconsidered their decision to terminate his employment. His self-serving claims that Defendants wrongly assessed his job performance and should have reconsidered their termination decision cannot manufacture a suggestion of retaliatory animus.

Courts often dismiss retaliation claims involving very similar fact patterns, even before discovery begins. In *Pinero*, for example, the court granted a Rule 12(b)(6) motion to dismiss a retaliatory discharge claim where the plaintiff conceded that the defendant decided not to renew the plaintiff's employment prior to the plaintiff's first alleged protected activity. *Pinero*, 375 F. Supp. 2d at 168. The plaintiff in *Pinero* attempted to stave off dismissal by alleging that, prior to the non-renewal of her employment becoming effective, she expressed her disagreement with the defendant's negative evaluation of her job performance and urged the defendant to reconsider its decision. *Id*. at 165, 168. The court in *Pinero* held that Plaintiff's objections to the defendant's decision were irrelevant. *Id.* at 168. The defendant's refusal to re-evaluate the plaintiff's job performance was not an adverse employment action as a matter of law. *Id*. Instead, it was merely maintaining the "status quo." *Id*. Based on that reasoning, *Pinero* held that the plaintiff was not entitled to discovery on her retaliatory discharge claims. *Id*.

Similarly, in *Dooley v. Jetblue Airways Corp.*, the court granted a Rule 12(b)(6) motion to dismiss retaliatory discharge claims where the defendant declined to reconsider its decision to terminate the plaintiff's employment for job performance issues. *Dooley*, 2015 WL 1514955, at *4. The plaintiff in *Dooley* filed an internal complaint and administrative appeal of the defendant's negative assessment of the plaintiff's job performance, claiming that the factual basis for the defendant's assessment was inaccurate and that she was scrutinized more closely because of her gender and disability. *Id.* at *1. The defendant nonetheless terminated the plaintiff's employment

9

and declined to reconsider its decision. *Id*. The court in *Dooley* held that the defendant merely "kept the status quo in place," which was not actionable retaliation as a matter of law. *Id*. at *4 (quoting *Pinero*, 375 F. Supp. 2d at 168).

In accordance with the cases cited above, Plaintiff cannot successfully pursue his retaliatory discharge claims by alleging that Defendants failed to reconsider their decision to terminate his employment. The "status quo" as of February 10, 2022 – as confirmed by Mr. Rohde's e-mail that same date – was that NYCHA had decided to terminate Plaintiff's employment. Plaintiff cannot rely on Defendants' refusal to change the status quo in order to state a viable retaliation claim. Instead, he needed to allege that he engaged in a protected activity prior to NYCHA's February 10, 2022 decision. *See* Ex. A to Reiter Decl.; *see also* Compl. ¶ 33. He did not (because he cannot). Plaintiff's inability to allege that critical fact requires dismissal of his retaliation claims.

**Point 3:   <u>When NYCHA Disclosed its Termination Decision to Plaintiff is Irrelevant</u>**

It also makes no difference that Defendants did not inform Plaintiff of their decision to terminate his employment until after his first alleged protected activity. The date of NYCHA's internal decision is material; the date Plaintiff learned of that decision is not.

New York federal courts agree on this important point. For example, in *Maitland v. Konica Minolta Business Solutions U.S.A., Inc.*, the defendant selected the plaintiff as part of a group layoff that was scheduled to take effect the following month. *Maitland*, 2016 WL 304884, at *3. The plaintiff in that case alleged that he complained of discrimination and retaliation *prior to being informed* of the defendant's layoff decision, but like the case at bar, he did not allege that his first alleged protected activity pre-dated the defendant's internal decision to lay him off. *Id*. *4. The court in *Maitland* held that the date of the employer's decision required dismissal of the plaintiff's

10

retaliatory discharge claim. *Id*. at \*12. It did not matter that the plaintiff first learned of the defendant's decision after his first alleged protected activity. *Id*. *Maitland* deemed that fact insufficient to establish a retaliation claim.

The court in *Tse v. New York University* reached the same conclusion. After the plaintiff in that case exhibited job performance issues, her manager recommended that the defendant terminate her employment. *Tse*, 2013 WL 5288848, at \*4. For over a year, the defendant in *Tse* neither finalized the termination decision nor informed the plaintiff of her manager's recommendation. *Id*. at \*4-5. In the interim, the plaintiff filed a discrimination complaint with the New York State Division of Human Rights. *Id*. at \*4. The court in *Tse* dismissed the plaintiff's retaliatory discharge claims because her manager recommended the termination of her employment prior to her first protected activity. *Id*. at \*17. It made no difference that the plaintiff in *Tse* engaged in a protected activity before learning of the termination decision and before the decision took effect.[4]

In accordance with *Maitland* and *Tse*, Plaintiff may not defeat Defendants' motion by merely alleging that Defendants did not inform him of the termination decision until after his first alleged protected activity. The date of NYCHA's internal decision is relevant, whereas the date Plaintiff learned of that decision has no bearing on the viability of his claims. To avoid dismissal, Plaintiff must allege more than when he learned of the termination decision – he must allege that he complained of discrimination before Defendants decided to terminate his employment. He

---

[4] Defendants acknowledge that *Maitland* and *Tse* were summary judgment cases. But that does not mean those cases are irrelevant here. The summary judgment standard only relates to the standard of review, not the requirements to plead a viable claim. *Maitland* and *Tse* nevertheless establish that a plaintiff cannot prevail on a retaliatory discharge claim merely because an employer informs a plaintiff of its termination decision after the plaintiff's first protected activity. Instead, as set forth in the cases cited herein, a plaintiff must allege facts capable of establishing that he engaged in a protected activity before the defendant decided to terminate his employment. And in any event, Defendants do not rely solely on summary judgment cases. In the other cases Defendants cite herein, such as *Pinero*, *Dooley*, and *McJunkin*, the courts granted the defendants' Rule 12(b)(6) motions.

11

cannot allege that required fact, especially in light of his concession that as of February 11, 2022, "the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment *had already been made*, . . ." Compl. ¶ 33 (emphasis added). Accordingly, his retaliation claims must be dismissed.

**Point 4:      The Court May Consider Mr. Rohde's February 10, 2022 E-Mail**

The Court should reject Plaintiff's anticipated argument that Mr. Rohde's February 10, 2022 e-mail may not be considered with a Rule 12(b)(6) motion. Generally, review of a Rule 12(b)(6) motion is limited to the allegations in the complaint. However, certain documents outside a complaint will still be deemed part of a complaint and, therefore, "fair game" for a motion to dismiss under Rule 12(b)(6). *See Cohen v. Capital One Funding, LLC*, 489 F. Supp. 3d 33, 46 (E.D.N.Y. 2020). These documents include written instruments attached to the complaint as an exhibit, documents referenced in the complaint, and documents that are integral to the plaintiff's claims. *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

Here, the Complaint references Mr. Rohde's February 10, 2022 e-mail several times. In paragraph 36 of the Complaint, Plaintiff references "the evidence provided by Defendants to Mr. Forrest's counsel that the decision to terminate purportedly had been made before the February 11, 2022 memorandum to and meeting with Mr. Forrest . . . ." Compl. ¶ 36. There is no dispute that "the evidence" referenced in that paragraph is Mr. Rohde's February 10, 2022 e-mail.

Similarly, in paragraph 63 of the Complaint, immediately before advancing his flawed "failure to reconsider" theory of retaliation, Plaintiff alleges that "NYCHA has asserted that language contained in an internal email suggests that it made the decision to terminate Mr. Forrest's employment before the February 11, 2022 memorandum, . . ." *Id*. ¶ 63. Plaintiff does

not dispute that the "language contained in an internal email" refers to Mr. Rohde's February 10, 2022 e-mail.

Although not as overt as the references above, Plaintiff also references Mr. Rohde's February 10, 2022 e-mail in paragraph 33 of the Complaint. In that paragraph, Plaintiff admits learning that NYCHA had decided to terminate his employment prior to his receipt of the Counseling Memorandum on February 11, 2022. *Id.* ¶ 33. Plaintiff admits in other portions of the Complaint that he learned that information via the production of Mr. Rohde's February 10, 2022 e-mail to his attorneys. *See id.* ¶¶ 36, 63.

Plaintiff's references to Mr. Rohde's February 10, 2022 e-mail in the Complaint allows the Court to consider the e-mail when reviewing Defendant's Rule 12(b)(6) motion. However, even assuming *arguendo* that Mr. Rohde's e-mail was not referenced in the Complaint, which it was, the e-mail may still be considered with this motion because the e-mail is integral to the Complaint. The "integral" document rule is intended to guard against the scenario where, as is the case here, a plaintiff has notice of a document but, through "clever drafting" or otherwise, the plaintiff intentionally avoids naming the document in the Complaint in an attempt to insulate the pleading from a dismissal motion. *See Global Network Comm's, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("The exception thus prevents plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting.").

This rule was directly at issue in *Pesserillo v. Nat'l Grid*. The defendant in that case contended that a document outside of the pleadings – a signed release agreement between the parties – should be considered in connection with the defendant's Rule 12(b)(6) motion. *Pesserillo v. Nat'l Grid*, 78 F. Supp. 3d 551, 554 (E.D.N.Y. 2015). In opposition, the plaintiff in *Pesserillo* argued that the validity of the release agreement was "hotly contested" and, in any case,

13

he never referenced the release agreement in his complaint. *Id*. The court rejected the plaintiff's argument and held, in relevant part:

> Plaintiff's failure to include matters of which as pleader he had notice and which were integral to his claim – and that he apparently most wanted to avoid – may not serve as a means of forestalling the district court's decision on a 12(b)(6) motion. Given Plaintiff's knowledge of the Agreement and his deliberate decision to omit any reference to it from his Complaint, the Court deems the Agreement incorporated into the Complaint by reference, particularly since it is "integral to plaintiff's ability to pursue" his cause of action.

*Id*. (alteration marks and quotations omitted) (citing *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

The same reasoning in *Pesserillo* applies here. Even if the Court finds that Plaintiff did not reference Mr. Rohde's February 10, 2022 e-mail in the Complaint, the e-mail should still be considered with this motion because Plaintiff possessed and knew of the e-mail prior to commencing this action. Plaintiff's vague references to Mr. Rohde's February 10, 2022 e-mail in the Complaint exemplify the type of pleading gamesmanship that the Second Circuit prohibits. *See Global Network Comm's*, 458 F.3d at 157. Further, as was the case with the outside document at issue in *Pesserillo*, Mr. Rohde's February 10, 2022 e-mail is necessarily "integral to [P]laintiff's ability to pursue his cause of action." *Pesserillo,* 78 F. Supp. 3d at 554. The document is essential to establishing whether Defendants decided to terminate his employment before or after his first alleged protected activity, which directly relates to the viability of Plaintiff's retaliatory discharge claims.

Based on the on the foregoing, the Court should consider Mr. Rohde's February 10, 2022 e-mail when reviewing this motion because the e-mail is incorporated by reference in the Complaint and integral to the Plaintiff's claims.

## V.     CONCLUSION

As set forth above, no amount of discovery can make Plaintiff's retaliation claims viable. He cannot allege that he engaged in a protected activity prior to Defendants' internal decision to terminate his employment.  Faced with this reality, the best Plaintiff can muster is an allegation that Defendants "failed to reconsider" their decision to terminate his employment.  In accordance with the precedent cited herein, that retaliation theory is defective as a matter of law.  Therefore, Defendants respectfully request the Court grant their motion to dismiss the retaliation claims in the Complaint pursuant to Rule 12(b)(6) and grant such other relief as the Court deems proper.

Dated: October 3, 2022
      New York, New York

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(212) 370-6296
nmreiter@venable.com
tableistein@venable.com

By:   /s/ Nicholas M. Reiter
      Nicholas M. Reiter
      Taylor A. Bleistein