UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TRACY L. FORREST,

       Plaintiff,

   v.

NEW YORK CITY HOUSING AUTHORITY,
LISA BOVA-HIATT, DAVID ROHDE, and
HALEY STEIN,

      Defendants.

Case No. 1:22-CV-06480-JLR

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S RETALIATORY DISCHARGE CLAIMS IN THE SECOND AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

VENABLE LLP
Nicholas M. Reiter
Taylor A. Bleistein
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
212.370.6296
nmreiter@venable.com
tableistein@venable.com

*Attorneys for Defendants*

i

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................. 1

II.    FACTUAL BACKGROUND ................................................................... 3

    A.   NYCHA's October 25, 2021 Meeting with Plaintiff ............................... 4

    B.   NYCHA's Decision to Separate Plaintiff from Employment ...................... 4

    C.   Plaintiff's First Alleged Discrimination Complaint to NYCHA ................. 5

    D.   NYCHA's Separation Meeting with Plaintiff ...................................... 6

III.    PROCEDURAL HISTORY ..................................................................... 7

IV.    APPLICABLE LEGAL STANDARDS ....................................................... 9

    A.   Motion to Dismiss ....................................................................... 9

    B.   Retaliation Claims ...................................................................... 10

V. ARGUMENT ..................................................................................... 11

    Point 1:    Plaintiff Conceded that Defendants Decided to Terminate His Employment Before His First Protected Activity.................................................................. 12

    Point 2:    Plaintiff Cannot Explain Away His Admission in the Original Complaint.......... 13

    Point 3:    Mr. Rohde's February 10, 2022 E-Mail Directly Contradicts Plaintiff's Allegation that Defendants were Merely "Considering" the Termination of Plaintiff's Employment ...... 15

    Point 4:   Defendants' Refusal to Reconsider its Termination Decision is Not Actionable ..... 18

    Point 5:   When NYCHA Disclosed its Termination Decision to Plaintiff is Irrelevant ......... 21

    Point 6:   Defendant's Alleged Actions After Mr. Rohde's February 10, 2022 Email Do Not State a Claim for Retaliatory Discharge ................................................................. 22

    Point 7:    Defendants' Alleged Withholding of Plaintiff's "Bonus Retirement Leave Pay" Is Irrelevant to the Motion to Dismiss the Retaliatory *Discharge* Claims.................................. 24

VI. CONCLUSION ................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arazi v. Cohen Brothers Realty Corp.*,
No. 1:20-CV-8837 (GHW), 2022 WL 912940 (S.D.N.Y. Mar. 28, 2022)..............................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).........................................................................................................9, 10

*Barnum v. Millbrook Care Ltd. Partnership*,
850 F. Supp. 1227 (S.D.N.Y. 1994).................................................................................3, 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................................9, 10

*Bernheim v. Litt*,
79 F.3d 318 (2d Cir. 1996)..............................................................................................1, 12

*Colliton v. Cravath, Swaine & Moore LLP*,
No. 08-CV-0400 (NRB), 2008 WL 4386764 (S.D.N.Y. Sept. 24, 2008).....................1, 13, 14

*Dooley v. Jetblue Airways Corp.*,
No. 14-CV-4432 (JMF), 2015 WL 1514955 (S.D.N.Y. Apr. 1, 2015) .......................... *passim*

*Doroz v. Columbia Place Assocs. LLC*,
No. 6:13-CV-1135, 2014 WL 5475289 (N.D.N.Y. Oct. 29, 2014) .......................................12

*Dozier v. Deutsche Bank Trust Co. Americas*,
No. 09-CV-9865 (LMM), 2011 WL 4058100 (S.D.N.Y. Sept. 1, 2011) ...............................13

*Europe v. Equinox Holdings, Inc.*,
No. 20-CV-7787 (JGK), 2022 WL 4124763 (S.D.N.Y. Sept. 9, 2022) .................................10

*Holmes v. Grubman*,
568 F.3d 329 (2d Cir. 2009).................................................................................................9

*Int'l Audiotext Network, Inc. v. Tel. & Tel. Co.*,
62 F.3d 69 (2d Cir. 1995)......................................................................................................5

*Lebowitz v. N.Y. City Dep't of Educ.*,
407 F. Supp. 3d 158 (E.D.N.Y. 2017) .............................................................................10, 11

*Maitland v. Konica Minolta Business Solutions U.S.A. Inc.*,
No. 09-CV-1675 (JMA) (AKT), 2016 WL 304884 (E.D.N.Y. Jan. 25, 2015)......19, 21, 22, 23

*McJunkin v. Suffolk County Civil Service*,
No. 13-CV-5045 (JS)(WDW), 2014 WL 3490720 (E.D.N.Y. Jul. 10, 2014) ..............2, 12, 22

iii

*Pena v. Bd. of Elections in the City of N.Y.*,
No. 16-CV-427 (VEC) (BCM), 2017 WL 722505 (S.D.N.Y. Feb. 6, 2017) ........................11

*Pinero v. Long Island State Veterans Home*,
375 F. Supp. 2d 162 (E.D.N.Y. 2005) ............................................................................ *passim*

*Poindexter v. EMI Record Group Inc.*,
No. 11-CV-559 (LTS) (JLC), 2012 WL 1027639 (S.D.N.Y. Mar. 27, 2012) ........................14

*Pollock v. Shea*,
568 F. Supp. 3d 500 (S.D.N.Y. 2021) ...................................................................................10

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ......................................................................................................5

*Soloviev v. Goldstein*,
104 F. Supp. 3d 232 (E.D.N.Y. 2015) ...................................................................................11

*Springle v. City of N.Y.*,
No. 11-CV-8827 (NRB), 2013 WL 592656 (S.D.N.Y. Feb. 14, 2013) .............................2, 13

*Tse v. New York Univ.*,
No. 10 Civ. 7207 (DAB), 2013 WL 5288848 (E.D.N.Y. Sept. 19, 2013) ............19, 21, 22, 23

*United States v. McKeon*,
738 F.2d 26 (2d Cir. 1984) .......................................................................................................2

*Yampolsky v. Morgan Stanley Inv. Advisers Inc.*,
No. 03-CV-5710(RO), 2014 WL 1065533 (S.D.N.Y. May 12, 2004) ...................................11

*Zoulas v. N.Y. City Dep't of Educ.*,
400 F. Supp. 3d 25 (S.D.N.Y. 2019) .....................................................................................10

**Statutes**

Age Discrimination in Employment Act ....................................................................................10

Civil Rights Act of 1964 Title VII ............................................................................................10

New York City Human Rights Law .......................................................................................4, 10

New York State Human Rights Law ...........................................................................................10

**Other Authorities**

F.R.C.P. § 12(b)(6) .............................................................................................................. *passim*

F.R.C.P. § 15(a)(1)(B) ......................................................................................................1, 2, 8

iv

Defendants New York City Housing Authority ("NYCHA"), Lisa Bova-Hiatt ("Ms. Bova-Hiatt"), David Rohde ("Mr. Rohde"), and Haley Stein ("Ms. Stein") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the retaliatory discharge claims in the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").

## I.    PRELIMINARY STATEMENT

Federal Rule of Civil Procedure 15(a)(1)(B) allows a party to amend its pleading as a matter of course.  But the right to amend a pleading does not magically erase the admissions in the original complaint.  Instead, "[w]here a plaintiff blatantly changes his statement of the facts in order to respond to the defendant's motion to dismiss and directly contradicts the facts set forth in his original complaint, a court is authorized to accept the facts described in the original complaint as true."  *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-CV-0400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008) (citations and quotations omitted).

That is what has happened here.  In his original Complaint, Plaintiff Tracy L. Forrest ("Plaintiff") admitted that NYCHA decided to terminate his employment *before* February 11, 2022 – the date he alleges he first complained to NYCHA about alleged discrimination.  *See* Original Complaint ("Orig. Compl.") ¶ 33.  That admission is fatal to his retaliatory discharge claims.  On that basis, Defendants previously moved to dismiss Plaintiff's retaliatory discharge claims pursuant to Rule 12(b)(6).  *See* ECF Nos. 15-17.  Defendants' prior motion was well-founded.  It is well-established that a retaliatory discharge claim fails as a matter of law if the employer decided to terminate the plaintiff before the plaintiff's first alleged protected activity.  *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005); *see also Bernheim v. Litt*, 79

1

F.3d 318, 325 (2d Cir. 1996); *McJunkin v. Suffolk County Civil Service*, No. 13-CV-5045 (JS)(WDW), 2014 WL 3490720, at *5 (E.D.N.Y. Jul. 10, 2014).  That rule is central to this motion.

In lieu of opposing the motion, Plaintiff filed the First Amended Complaint as a matter of right pursuant to Rule 15(a)(1)(B).[1]  Having seen the folly of his first pleading, Plaintiff now tries to walk back his original admission about when NYCHA decided to terminate his employment. He replaced his admission in paragraph 33 of the Original Complaint with an allegation that Defendants were merely "considering" the termination of his employment prior to his first alleged complaint of discrimination.  *Compare* Orig. Compl. ¶ 33 *with* Second Amended Complaint ("SAC") ¶ 34.

The Court should not condone Plaintiff's willingness to speak out of both sides of his mouth.  Plaintiff "cannot advance one version of the facts in his pleadings, conclude that his interests would be better served by a different version, and amend his pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories." *United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984).  The Court can (and must) consider Plaintiff's admissions in the Original Complaint.  *Id.* (reversing district court's refusal to admit admissions in original complaint into evidence); *Springle v. City of N.Y.*, No. 11-CV-8827 (NRB), 2013 WL 592656, at *6 (S.D.N.Y. Feb. 14, 2013) (relying upon admissions from withdrawn claims in consideration of motion to dismiss under Rule 12(b)(6)).

In any event, Plaintiff's prior admission is not the only reason to dismiss the retaliatory discharge claims.  The Second Amended Complaint also references (and therefore incorporates) a February 10, 2022 e-mail that establishes NYCHA had already decided to terminate Plaintiff's

---

[1] More recently, after the parties fully briefed Defendants' second-filed motion to dismiss the retaliatory discharge claims in the First Amended Complaint, Plaintiff filed the Second Amended Complaint, on consent, to add an additional allegation that was not included within the First Amended Complaint.  *See* ECF Nos. 34-35.  As discussed further below, that single new allegation does not relate to this motion.

employment prior to his first alleged complaint on February 11, 2022. *See* SAC ¶ 34. This document directly contradicts Plaintiff's speculative, newly pleaded allegation that Defendants were merely "considering" the termination of his employment as of February 10, 2022. *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994) ("[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint."). Therefore, even if the Court were to ignore Plaintiff's prior admission in the Original Complaint, which it should not do, the retaliatory discharge claims still fail as a matter of law.

It is not difficult to see what happened here. Plaintiff reviewed Defendants' first motion to dismiss and realized his retaliatory discharge claims were defective as a matter of law because of his prior admission about when NYCHA decided to terminate his employment. He is now trying to undo that prior admission and explain away the plain meaning of Mr. Rohde's February 10, 2022 e-mail. He cannot do either. Therefore, the retaliatory discharge claims must be dismissed.

## II.  FACTUAL BACKGROUND

NYCHA is a public benefit corporation organized under the laws of New York. SAC ¶ 5. NYCHA is one of the nation's largest public housing organizations, operating more than 340 public housing developments in New York City. *Id.* On or about April 1, 2002, NYCHA hired Plaintiff, who is male, as an attorney in its Law Department. *Id.* ¶¶ 4, 12, 13.

In or around February 2020, NYCHA appointed Ms. Bova-Hiatt as its Executive Vice President for Legal Affairs and General Counsel. *Id.* ¶¶ 6, 16. Ms. Bova-Hiatt is currently NYCHA's Interim Chief Executive Officer. *Id.* ¶ 6. At all times relevant to this action, NYCHA has employed Mr. Rohde as its Managing Attorney and Senior Vice-President for Legal Affairs

and Ms. Stein as its Special Counsel to the General Counsel. *Id.* ¶¶ 7-8.[2] Plaintiff alleges that Ms. Bova-Hiatt, Mr. Rohde, and Ms. Stein were each his "employers" within the meaning of the New York City Human Rights Law by virtue of their roles as his supervisors and their involvement in the decision to terminate his employment. *Id.* ¶¶ 6-8.

### A.  NYCHA's October 25, 2021 Meeting with Plaintiff

In September 2021, Mr. Rohde and Ms. Stein directed Plaintiff to create an action plan for handling the substantial backlog of pending cases assigned to NYCHA's Landlord/Tenant Division – the Division within the Law Department to which Plaintiff was assigned. *Id.* ¶ 21.  On October 25, 2021, Mr. Rohde and Ms. Stein met with Plaintiff to discuss his proposed action plan. *Id.* ¶ 22.  Mr. Rohde and Ms. Stein were critical of Plaintiff's action plan during this meeting. *Id.* Based upon her dissatisfaction with Plaintiff's action plan, Ms. Stein reportedly expressed her doubts about Plaintiff's continued employment at NYCHA, allegedly telling Plaintiff "we are done with you." *Id.*  At the end of the October 25, 2021 meeting, Mr. Rohde and Ms. Stein informed Plaintiff that NYCHA intended to install a new Chief of the Landlord/Tenant Division. *Id.*

### B.  NYCHA's Decision to Separate Plaintiff from Employment

Following the October 25, 2021 meeting, NYCHA evaluated Plaintiff's job performance and considered whether to continue his employment.  By February 10, 2022, NYCHA had made up its mind.  On that date, Mr. Rohde sent an e-mail to Ms. Bova-Hiatt, Ms. Stein, and other NYCHA managers regarding NYCHA's decision to terminate Plaintiff's employment. *See* Ex. 1 to Declaration of Nicholas M. Reiter ("Reiter Decl.").[3]  Mr. Rohde's February 10, 2022 e-mail stated, in relevant part:

---

[2] Subsequent to the filing of this action, Mr. Rohde assumed the role of Interim Executive Vice President for Legal Affairs and General Counsel.  SAC ¶ 7.

[3] Mr. Rohde's e-mail may be considered when reviewing this motion because the e-mail is expressly referenced in the

> In order not to be rushing a process that requires careful thought and coordination, I have adjourned *the separation meeting* with Mr. Forrest to the afternoon of 25 February. The adjourned date should give us sufficient time to finalize the separation agreement to everyone's satisfaction, serve the counseling memo *in advance of the separation meeting* (if so directed by HR), and align schedules in the L&T Division to have managerial coverage/manage any negative impacts *in the wake of Mr. Forrest's separation.*

*Id.* (emphasis added).

As set forth in Mr. Rohde's email, NYCHA postponed Plaintiff's separation meeting until February 25, 2022 in order to afford NYCHA more time to finalize Plaintiff's separation agreement.   *Id.*   Mr. Rohde also described NYCHA's plan to issue Plaintiff a counseling memorandum – in advance of the separation meeting then-scheduled for February 25, 2022 – regarding Plaintiff's unsatisfactory job performance.   *Id.*   At the end of the e-mail, Mr. Rohde commented upon the need to arrange staffing coverage as a result of Plaintiff's then-forthcoming separation from NYCHA.   *Id.*   As set forth below, and as Plaintiff conceded in the Original Complaint (*see* Orig. Compl. ¶ 33), Mr. Rohde's e-mail establishes that NYCHA had already decided to terminate Plaintiff's employment no later than February 10, 2022.

### C.   Plaintiff's First Alleged Discrimination Complaint to NYCHA

On February 11, 2022, NYCHA issued Plaintiff a Counseling Memo for Unsatisfactory Work Performance (the "Counseling Memo").  SAC ¶ 29.  Plaintiff took exception to the critiques of his job performance described in the Counseling Memo.  *Id.* ¶¶ 30-32.  He claims that in light of the "clearly false and baseless accusations about his performance" in the Counseling Memo, he "complained to Mr. Rohde and Ms. Stein on February 11, 2022 about the hostile work environment he had been forced to endure and NYCHA's discriminatory treatment of him as an older, male

---

Second Amended Complaint (*see* SAC ¶ 34) and is integral to the viability of Plaintiff's retaliatory discharge claims. *See Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000); *Int'l Audiotext Network, Inc. v. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

supervisory employee." *Id*. ¶ 33.   Assuming the complaint was made, Plaintiff's February 11, 2022 complaint in response to the Counseling Memo is his first alleged complaint to NYCHA. *See id*. ¶ 47 (alleging NYCHA "retaliated against Plaintiff after he complained of discrimination himself on February 11, 2022").   Therefore, the earliest he allegedly engaged in a protected activity is February 11, 2022 – one day *after* Mr. Rohde's above-referenced e-mail.

Plaintiff also concedes that during the February 11, 2022 meeting, Defendants informed him of a subsequent meeting scheduled for February 25, 2022 to discuss his job performance issues described in the Counseling Memo. *Id*. ¶ 35.   This is the same February 25, 2022 "separation meeting" that Mr. Rohde referenced in his February 10, 2022 e-mail to the other Defendants. *See* Ex. 1 to Reiter Decl.

### D.      NYCHA's Separation Meeting with Plaintiff

On March 4, 2022, after another postponement of the separation meeting due to Plaintiff's vacation schedule, NYCHA informed Plaintiff of its decision to terminate his employment.  SAC ¶ 37.  At that time, Plaintiff was less than one month away from reaching his 20-year employment anniversary on April 2, 2022.   In order to allow Plaintiff to reach his 20-year anniversary, which helped him become eligible for better retirement benefits, NYCHA informed Plaintiff that he was suspended *with* pay from March 4, 2022 through April 2, 2022, at which time his termination of employment would become effective. *Id*.

On or about March 24, 2022, while on paid suspension, Plaintiff tendered his retirement papers to NYCHA.  Orig. Compl. ¶ 37.  As a result of his retirement election, NYCHA notified Plaintiff that it acknowledged his retirement and, therefore, no longer intended to involuntarily terminate his employment effective April 2, 2022. *Id*.  NYCHA does not deny that it previously decided to terminate Plaintiff's employment, and NYCHA agrees that Plaintiff would not have

remained employed after April 2, 2022 had he not elected to retire beforehand.  In any event, Plaintiff's employment ended on April 2, 2022.  *Id*.  He was 57 years old at that time.  SAC ¶ 4.

### III.    PROCEDURAL HISTORY

Several months prior to the commencement of this action, on March 4, 2022, Defendants produced to Plaintiff, through counsel, a copy of Mr. Rohde's February 10, 2022 e-mail.  Reiter Decl. ¶ 1; SAC ¶ 34.  Plaintiff acknowledged receipt of Mr. Rohde's e-mail in his Original Complaint.  *See* Orig. Compl. ¶¶ 36, 63.  Plaintiff also acknowledges in the Second Amended Complaint the production of the e-mail to his attorneys.  *See* SAC ¶ 34 ("NYCHA's outside counsel on March 4, 2022 presented Mr. Forrest's counsel with a February 10, 2022 email that discusses Mr. Forrest's 'separation' from employment.").

On August 1, 2022, Plaintiff filed the Original Complaint in this case.  *See* ECF No. 5. Plaintiff alleges that Defendants fired him because of his gender (male) and age (57 years) and in retaliation for his internal complaints about gender and age discrimination.  Defendants deny the allegations.  Relevant to this motion, in his Original Complaint, Plaintiff alleged that by the time NYCHA issued him the Counseling Memorandum on February 11, 2022, "the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment had already been made." Orig. Compl. ¶ 33.

On August 25, 2022, Defendants requested that Plaintiff amend his complaint in lieu of costly and time-consuming motion practice related to his retaliation claims.  *See* Ex. 2 to Reiter Decl.  Defendants' letter to Plaintiff's attorneys described the defects in Plaintiff's retaliatory discharge claims – namely, Plaintiff's inability to allege a protected activity before Defendants decided to terminate Plaintiff's employment on or before February 10, 2022, as demonstrated by Mr. Rohde's e-mail sent on the same date.  *See id*.  Accordingly, Defendants requested Plaintiff

either allege a protected activity *before* Defendants' February 10, 2022 decision to terminate his employment or, if not, withdraw his baseless retaliatory discharge claims.  *Id*.

In response, on September 15, 2022, Plaintiff refused to amend his pleading.  *See* Ex. 3 to Reiter Decl.  According to Plaintiff at that time, Defendants' refusal to reconsider their February 10, 2022 decision to terminate Plaintiff's employment constituted illegal retaliation.  *See id*. at 2 ("Defendants should have changed whatever decision they claimed to have reached on February 10, 2022 regarding Mr. Forrest's continued employment.").

On October 3, 2022, Defendants moved to dismiss Plaintiff's retaliatory discharge claims pursuant to Rule 12(b)(6).  ECF Nos. 15-17.  On October 17, 2022, in lieu of opposing the motion, Plaintiff filed the First Amended Complaint pursuant to Rule 15(a)(1)(B).  ECF No. 18.  At that time, Plaintiff deleted his admission in paragraph 33 of the Original Complaint regarding the latest date NYCHA had decided to terminate his employment (no later than February 10, 2022). *Compare* Orig. Compl. ¶ 33 *with* First Amended Complaint ("FAC") ¶¶ 33-34.  Plaintiff swapped out his prior admission with a new allegation that, as of February 10, 2022, Defendants were merely "considering" the termination of Plaintiff's employment.  FAC ¶ 34.

On October 31, 2022, Defendants moved (again) to dismiss Plaintiff's retaliatory discharge claims pursuant to Rule 12(b)(6).  *See* ECF Nos. 22-24.  Plaintiff opposed that motion, and the motion was fully briefed before the Court as of November 21, 2022.  *See* ECF Nos. 27-28.

In December 2022, Plaintiff requested Defendants' consent for leave to file the Second Amended Complaint.  Reiter Decl. ¶ 12.  After several discussions between counsel, Defendants consented to Plaintiff's request with the understanding that they would have the opportunity to brief the Court as to why the twice amended pleading still failed to state a claim for retaliatory discharge.  *See* ECF No. 34. The Second Amended Complaint is virtually identical to the First

Amended Complaint, except it adds a new paragraph 41, in which Plaintiff alleges that after he submitted his retirement papers, Defendants retaliated against him by denying him "'bonus retirement leave' pay, in an amount no less than $14,850" unless he signed a release of claims. SAC ¶ 41. Defendants deny that allegation. But in any event, as discussed below, that single new allegation – an alleged isolated retaliatory act that happened *after* Defendants had already decided to terminate Plaintiff's employment– is not the subject of this present motion, nor does it somehow cure the obvious defects in Plaintiff's retaliatory *discharge* claims, all of which relate to Plaintiff's inability to plead a protected activity before Defendants decided to terminate his employment.

## IV.    APPLICABLE LEGAL STANDARDS

### A.    Motion to Dismiss

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the Complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). To defeat the motion, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009). The facts alleged in the complaint must show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A claim that is merely conceivable does not meet the plausibility standard. If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly* 550 U.S. at 570. Whether a complaint meets the

plausibility threshold is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.      Retaliation Claims

The pleading requirements for Plaintiff's retaliation claims are well-established.  To state a retaliation claim under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), or the New York City Human Rights Law ("NYCHRL"), "a plaintiff must allege that (1) [he] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Zoulas v. N.Y. City Dep't of Educ.*, 400 F. Supp. 3d 25, 56-57 (S.D.N.Y. 2019) (citations omitted); *Lebowitz v. N.Y. City Dep't of Educ.*, 407 F. Supp. 3d 158, 177 (E.D.N.Y. 2017) (holding that the same ADEA pleading standards apply to retaliation claims under Title VII, the NYSHRL, and NYCHRL) (citations omitted).

It is also well-established that the NYSHRL and the NYCHRL must be construed more liberally than Title VII.  *See Europe v. Equinox Holdings, Inc.*, No. 20-CV-7787 (JGK), 2022 WL 4124763, at *7 n.10 (S.D.N.Y. Sept. 9, 2022) (citations omitted).  But that does not mean that a plaintiff receives a free pass on pleading causation for NYSHRL and NYCHRL retaliation claims. Even after the New York City Council amended the NYCHRL, the law still "uses the same framework as Title VII and the NYSHRL." *Pollock v. Shea*, 568 F. Supp. 3d 500, 511 (S.D.N.Y. 2021).

That "framework" for retaliation claims obviously includes the causation element.  To plead a retaliation claim under the NYSHRL or NYCHRL, the "plaintiff must show [he] took an action opposing the employer's discrimination, and that, *as a result*, the employer engaged in

10

conduct that was reasonably likely to deter a person from engaging in such action." *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 252 (E.D.N.Y. 2015) (emphasis added); *see also Arazi v. Cohen Brothers Realty Corp.*, No. 1:20-CV-8837 (GHW), 2022 WL 912940, at *17 (S.D.N.Y. Mar. 28, 2022) (holding that to plead a retaliation claim under the NYCHRL, a plaintiff must plead, among other things, that "there is a causal connection between the protected activity and the alleged retaliatory conduct"). Common sense dictates that an employer's termination decision cannot be "as a result" of the plaintiff's opposition to discrimination if the employer decided to terminate the plaintiff *before* the plaintiff first voiced his opposition. That cardinal rule – i.e., the causation element – is what is relevant here. The more liberal construction of the NYSHRL and NYCHRL is not.[4]

## V. ARGUMENT

No amount of discovery can cure the defects in Plaintiff's retaliatory discharge claims. *Yampolsky v. Morgan Stanley Inv. Advisers Inc.,* No. 03-CV-5710(RO), 2014 WL 1065533, at *2 (S.D.N.Y. May 12, 2004) ("While [Federal Rule of Civil Procedure] 8 is a liberal standard, plaintiff[] cannot simply promise the court that once they have completed discovery, something will turn up.") (internal citations omitted). Plaintiff previously admitted that Defendants decided to terminate his employment before his first alleged complaint of discrimination on February 11, 2022. *See* Orig. Compl. ¶ 33. His backwards pedaling in the First and Second Amended Complaints speaks volumes about the viability of his retaliatory discharge claims. Because Defendants decided to terminate Plaintiff's employment no later than February 10, 2022 – one day

---

[4] In accordance with the point above, New York federal courts have tossed out NYSHRL and NYCHRL retaliation claims on a Rule 12(b)(6) motion for failing to plead causation. *See, e.g., Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp. 3d 158, 178 (E.D.N.Y. 2017); *Pena v. Bd. of Elections in the City of N.Y.*, No. 16-CV-427 (VEC) (BCM), 2017 WL 722505, at *13-14 (S.D.N.Y. Feb. 6, 2017), adopted by 2017 WL 713561, at *1-2 (S.D.N.Y. Feb. 22, 2017); *Soloviev*, 104 F. Supp. 3d at 252-253.

before Plaintiff's first alleged protected activity – Plaintiff cannot state a retaliatory discharge claim as a matter of law.

**Point 1:   Plaintiff Conceded that Defendants Decided to Terminate His Employment Before His First Protected Activity**

It is well-established that "[t]here can be no inference of retaliatory animus where the adverse employment action occurred prior to the protected activity." *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) (granting Rule 12(b)(6) motion to dismiss retaliation claims) (citations omitted); *see also Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996) ("Clearly, [the plaintiff] may not base her claim of retaliation upon complained-of acts that predated her speaking out…"); *McJunkin v. Suffolk County Civil Service*, No. 13-CV-5045 (JS)(WDW), 2014 WL 3490720, at *5 (E.D.N.Y. Jul. 10, 2014) (granting Rule 12(b)(6) motion to dismiss retaliation claims where first alleged protected activity occurred after the Defendants' termination of the plaintiff's employment) (citing *Pinero*, 375 F. Supp. 2d at 168); *Doroz v. Columbia Place Assocs. LLC*, No. 6:13-CV-1135, 2014 WL 5475289, at *7 (N.D.N.Y. Oct. 29, 2014) (same) (citing *Pinero*, 375 F. Supp. 2d at 168).

That rule is particularly relevant to this case.  The original and amended pleadings are replete with admissions that Defendants considered and eventually decided to terminate Plaintiff's employment *before* his first alleged protected activity on February 11, 2022.  First, Plaintiff alleges that Ms. Stein told him on October 25, 2021 that "we are done with you," thereby admitting that Defendants were at least mulling over Plaintiff's termination of employment at that time – approximately four months before Plaintiff's first alleged protected activity.  *See* SAC ¶ 22.  Next, Plaintiff alleges that prior to receiving the Counseling Memo on February 11, 2022, Defendants were already engaged in "a continuing brazen, and concerted series of action ultimately designed to force Mr. Forrest out of NYCHA."  *Id.* ¶ 27.  Most importantly, in the Original Complaint,

Plaintiff conceded that, as of February 11, 2022, "the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment *had already been made*, . . ." *Id*. ¶ 33 (emphasis added).

In accordance with the cases cited above and common sense, these admissions, considered in tandem with Mr. Rohde's February 10, 2022 e-mail, are fatal to Plaintiff's retaliatory discharge claims. Defendants could not have fired Plaintiff in retaliation for his protected activities – the earliest of which he alleges occurred on February 11, 2022 – if they had already decided to terminate his employment no later than a day beforehand. Accordingly, the retaliatory discharge claims should be dismissed.

**Point 2:   <u>Plaintiff Cannot Explain Away His Admission in the Original Complaint</u>**

Courts routinely consider admissions in prior pleadings when granting a Rule 12(b)(6) motion to dismiss. *See, e.g., Springle*, 2013 WL 592656, at *6 (relying upon the plaintiff's factual allegations in withdrawn claims as "admissions" when granting the defendant's Rule 12(b)(6) motion); *Dozier v. Deutsche Bank Trust Co. Americas*, No. 09-CV-9865 (LMM), 2011 WL 4058100, at *4 (S.D.N.Y. Sept. 1, 2011) (granting Rule 12(b)(6) motion where the plaintiff's allegations in an amended complaint were "contrary to allegation in [the plaintiff's] previous pleadings"); *Colliton*, 2008 WL 4386764, at *6 (refusing to consider a plaintiff's allegations in an amended complaint in connection with a Rule 12(b)(6) motion where the allegations contradicted the allegations in the original complaint);[5] *see also Poindexter v. EMI Record Group Inc.*, No. 11-CV-559 (LTS) (JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012)  ("[E]ven though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original

---

[5] In furtherance of courts' understandable distaste for litigants who assert contradictory facts in their pleadings, *Colliton* also imposed Rule 11 sanctions against the plaintiff for, among other things, filing contradictory allegations in his amended complaint "in a transparent attempt to plead around the legal defenses presented by [the defendant]." *Colliton*, 2008 WL 4386764 at *13.

complaint and attached exhibits.").

Here, Plaintiff's pleading gamesmanship is obvious.  In his Original Complaint, he alleged, in relevant part:

> The false and fabricated conclusion to the February 11, 2022 memorandum is exemplified by the fact that, as Mr. Forrest learned weeks later, *the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment had already been made*, . . ."

Orig. Compl. ¶ 33 (emphasis added).

Thus, in the above-referenced portion of the Original Complaint, Plaintiff admitted that Defendants had already decided to terminate his employment prior to delivery of the Counseling Memo, which he concedes he received *before* his first alleged complaint to NYCHA.  *See* Orig. Compl. ¶ 33.  Meanwhile, in the Second Amended Complaint (filed after Plaintiff reviewed Defendants' first two motions to dismiss the retaliation claims), that same allegation is nowhere to be found.  Instead, Plaintiff replaced that allegation with:

> Mr. Forrest later learned that at about the time the Memorandum was presented to him, Ms. Bova-Hiatt, Mr. Rohde, and Ms. Stein *were already considering terminating Plaintiff's employment*.

SAC ¶ 34 (emphasis added).

The Court should not tolerate Plaintiff's bait-and-switch attempt here.  His newly pleaded allegation that Defendants were merely "considering" his termination (SAC ¶ 34) does not expunge his prior admission that, as of February 11, 2022, "the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment had already been made."  Orig. Compl. ¶ 33.  In light of Plaintiff's admission that Defendants decided to terminate his employment before his first alleged protected activity, the retaliatory discharge claims should be dismissed.[6]

---

[6] Further, as discussed in point 4 *supra*, even if Defendants were only "considering" the termination of Plaintiff's employment as of February 11, 2022 (instead of having decided to terminate Plaintiff's employment, as Plaintiff

**Point 3:     Mr. Rohde's February 10, 2022 E-Mail Directly Contradicts Plaintiff's Allegation that Defendants were Merely "Considering" the Termination of Plaintiff's Employment**

Even assuming *arguendo* that Plaintiff did not admit that Defendants decided internally to terminate his employment before his first protected activity, which he did, Mr. Rohde's February 10, 2022 e-mail nevertheless establishes the same fact.  Mr. Rohde's e-mail is not ambiguous.  In the first sentence of his e-mail, he stated that he adjourned Plaintiff's "separation meeting" until February 25, 2022.  Ex. 1 to Reiter Decl.  It makes little sense that Mr. Rohde would call the next scheduled meeting with Plaintiff a "separation meeting" unless NYCHA had already decided to separate Plaintiff from employment at that time.  He did not say *potential* separation meeting.  In the next sentence of his e-mail, Mr. Rohde explained that, by adjourning the "separation meeting" until February 25, 2022, NYCHA would have enough time to "finalize the separation agreement" and arrange for adequate staffing coverage "in the wake of Mr. Forrest's separation."  *Id*.

Those words do not reflect equivocation.  They are not the words of an employer merely "considering" Plaintiff's separation.  As set forth in Mr. Rohde's e-mail, as of February 10, 2022, Defendants were already making arrangements for NYCHA's operations post-Plaintiff's separation.  No matter how many times Plaintiff may amend his complaint, none of the new allegations changes this important fact or the plain meaning of Mr. Rohde's February 10, 2022 e-mail.

Plaintiff offers only two new facts – as opposed to conclusions – that were not pleaded in the Original Complaint.  First, Plaintiff alleges that, on February 11, 2022, Mr. Rohde refused to delay the next meeting then-scheduled for February 25, 2022 to discuss Plaintiff's employment

---

previously admitted in the Original Complaint and as further demonstrated by Mr. Rohde's February 10, 2022 e-mail), Plaintiff still cannot state a retaliatory discharge claim by merely alleging that Defendants should have reconsidered that decision. Pursuant to the precedent cited in point 4 *supra*, it is well-established that an employer's failure to reconsider a separation decision is not actionable retaliation.

status.  SAC ¶ 35.  And second, Plaintiff alleges that, during the February 11, 2022 job performance meeting, Mr. Rohde supposedly said, "Why do you need a lawyer, you are merely getting a counseling memo, that's it."  *Id*.

Assuming the truth of both allegations for purposes of this motion only, neither fact saves the retaliatory discharge claims from dismissal.  Mr. Rohde's alleged refusal on February 11, 2022 to adjourn the February 25, 2022 meeting is entirely consistent with his previously stated intention – expressed in his February 10, 2022 e-mail – to separate Mr. Forrest from employment effective that same day.  That new allegation corroborates the fact that NYCHA had already decided to terminate Plaintiff's employment as of the date of Mr. Rohde's e-mail.  As to Mr. Rohde's alleged questioning of Plaintiff's interest in hiring a lawyer, that allegation is, at most, a non-sequitur as it relates to the issue presented.  It has no bearing as to whether NYCHA had already made up its mind to fire Plaintiff.  The comment, assuming it was made, does not somehow change Mr. Rohde's stated intent – expressed just one day earlier via his internal e-mail – to conduct a separation meeting with Mr. Forrest on February 25, 2022 and to "align schedules in the L&T Division to have managerial coverage/manage any negative impacts *in the wake of Mr. Forrest's separation*."  Ex. 1 to Reiter Decl. (emphasis added).  The comment, therefore, does not create a plausible claim that NYCHA was merely "considering" Plaintiff's potential separation, especially in light of the plain meaning of Mr. Rohde's February 10, 2022 e-mail.  And in any event, Mr. Rohde's alleged comment about Plaintiff hiring a lawyer does not negate Plaintiff's prior admission in paragraph 33 of the Original Complaint that NYCHA had already decided to terminate his employment.

The other new "allegations" in the First and Second Amended Complaints are either conclusions or admitted speculation.  In either case, they are not afforded the assumption of truth

for purposes of a Rule 12(b)(6) motion. Plaintiff's allegation that NYCHA was merely "considering" the termination of his employment as of February 11, 2022 is a bald assertion that is directly contradicted by Plaintiff's prior admission in the Original Complaint and Mr. Rohde's February 10, 2022 e-mail. *Barnum*, 850 F. Supp. at 1232 ("[I]f the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint.").

This is now the third time Plaintiff has seen Defendants' motion to dismiss his retaliatory discharge claims. Yet, Plaintiff still has no answer for the unambiguous meaning of Mr. Rohde's February 10, 2022 e-mail. If, as Plaintiff now dubiously claims, Defendants were merely "considering" the termination of his employment as of February 11, 2022, then he must offer a plausible explanation for why Mr. Rohde would tell his NYCHA colleagues one day earlier that they needed to "finalize the separation agreement" and "align schedules" in order to arrange "coverage/manage any negative impacts *in the wake of Mr. Forrest's separation*." Ex. 1 to Reiter Decl. (emphasis added). No such explanation exists. Instead, Mr. Rohde's e-mail – which is incorporated by reference within the Second Amended Complaint – directly contradicts Plaintiff's self-serving allegation that Defendants were somehow only "considering" the termination of Plaintiff's employment as of February 10, 2022.

Similarly, Plaintiff's allegation that the decision to fire him "would have required sign off at the highest levels and approval by Human Resources" is pleaded "[u]pon on information and belief." SAC ¶ 39. Those conclusory and speculative allegations cannot defeat Defendants' motion. And in any case, even if a termination decision required sign-off by Human Resources, the decision still cannot be retaliatory if the decision-makers made their decision before the employee's first alleged protected activity (which is the case here).

17

Based on the foregoing, the Court should dismiss the retaliatory discharge claims because Plaintiff has admitted and Mr. Rohde's February 10, 2022 e-mail further establishes that Defendants decided to terminate Plaintiff's employment prior to his first alleged protected activity.

**Point 4:   <u>Defendants' Refusal to Reconsider its Termination Decision is Not Actionable</u>**

Plaintiff is obviously aware of Mr. Rohde's February 10, 2022 e-mail and the obstacle it presents for his retaliatory discharge claims.  In a futile attempt to overcome this obstacle, Plaintiff alleges that Defendants' refusal to reconsider its negative assessment of his job performance constituted unlawful retaliation.  *See* SAC ¶ 40 (accusing Defendants of "refus[ing] to review (despite being offered the opportunity) his evidence that accusations regarding his performance in the [Counseling] Memorandum were false and baseless").

Courts routinely reject the "failure to reconsider" retaliation theory as a matter of law.  *See, e.g., Pinero*, 375 F. Supp. 2d at 168 ("The failure to reevaluate the Plaintiff was not a 'materially adverse change,' rather it was an action that kept the status quo in place."); *Dooley v. Jetblue Airways Corp.*, No. 14-CV-4432 (JMF), 2015 WL 1514955, at *4 (S.D.N.Y. Apr. 1, 2015) ("Jetblue declined to reevaluate that termination in Plaintiff's appeal, but that does not qualify as an adverse employment action; instead, it was an action that kept the status quo in place.") (citing *Pinero*, 375 F. Supp. 2d at 168);[7] *Maitland v. Konica Minolta Business Solutions U.S.A. Inc.*, No. 09-CV-1675 (JMA) (AKT), 2016 WL 304884, at *12 (E.D.N.Y. Jan. 25, 2015) (dismissing retaliatory discharge claims where employer decided internally to select an employee for layoff one month prior to employee's first alleged protected activity); *Tse v. New York Univ.*, No. 10 Civ. 7207 (DAB), 2013 WL 5288848, at *17 (E.D.N.Y. Sept. 19, 2013) (dismissing retaliatory

---

[7] *Dooley* was affirmed in part and vacated in part. *See* 636 F. App'x 16 (2d Cir. 2015).  Relevant to this motion, the dismissal of the retaliation claims was affirmed. *Id*. at 19.

18

discharge claims where employer decided internally to terminate plaintiff's employment prior to first alleged protected activity).

In order to state a retaliatory discharge claim, Plaintiff needs more than an allegation that Defendants should have reconsidered their negative assessment of his job performance.  An employee disagreeing with his employer's negative view of his job performance is hardly a novel concept.  It is no wonder, then, that courts require more than that common disagreement to create an inference of retaliatory animus. Plaintiff's misplaced reliance upon NYCHA's March 4, 2022 statement that it "presently intended" to terminate his employment suffers from the same flawed logic.  As much as Plaintiff wishes NYCHA reconsidered its then-present intention, its failure to do so cannot constitute retaliation as a matter of law.

Indeed, courts often dismiss retaliation claims involving very similar fact patterns, even before discovery begins.  In *Pinero*, for example, the court granted a Rule 12(b)(6) motion to dismiss a retaliatory discharge claim where the plaintiff conceded that the defendant decided not to renew the plaintiff's employment prior to the plaintiff's first alleged protected activity.  *Pinero*, 375 F. Supp. 2d at 168.  The plaintiff in *Pinero* attempted to stave off dismissal by alleging that, prior to the non-renewal of her employment becoming effective, she expressed her disagreement with the defendant's negative evaluation of her job performance and urged the defendant to reconsider its decision.  *Id*. at 165, 168.  The court in *Pinero* held that Plaintiff's objections to the defendant's decision were irrelevant.  *Id.* at 168. The defendant's refusal to re-evaluate the plaintiff's job performance was not an adverse employment action as a matter of law.  *Id*.  Instead, it was merely maintaining the "status quo."  *Id*.  Based on that reasoning, *Pinero* held that the plaintiff was not entitled to discovery on her retaliatory discharge claims.  *Id*.

Similarly, in *Dooley v. Jetblue Airways Corp.*, the court granted a Rule 12(b)(6) motion to dismiss retaliatory discharge claims where the defendant declined to reconsider its decision to terminate the plaintiff's employment for job performance issues. *Dooley*, 2015 WL 1514955, at *4. The plaintiff in *Dooley* filed an internal complaint and administrative appeal of the defendant's negative assessment of the plaintiff's job performance, claiming that the factual basis for the defendant's assessment was inaccurate and that she was scrutinized more closely because of her gender and disability. *Id.* at *1. The defendant nonetheless terminated the plaintiff's employment and declined to reconsider its decision. *Id.* The court in *Dooley* held that the defendant merely "kept the status quo in place," which was not actionable retaliation as a matter of law. *Id.* at *4 (quoting *Pinero*, 375 F. Supp. 2d at 168).

In accordance with the cases cited above, Plaintiff cannot successfully pursue his retaliatory discharge claims by alleging that Defendants failed to reconsider their decision to terminate his employment. The "status quo" as of February 10, 2022 – as confirmed by Mr. Rohde's e-mail that same date – was that NYCHA had decided to terminate Plaintiff's employment. Plaintiff cannot rely on Defendants' refusal to change the status quo in order to state a viable retaliatory discharge claim. Instead, he needed to allege that he engaged in a protected activity prior to Defendants' February 10, 2022 separation decision. *See* Ex. 1 to Reiter Decl.; *see also* Orig. Compl. ¶ 33. Even after twice amending his complaint, he has not alleged that fact (because he cannot allege that fact). His only recourse is to file contradictory pleadings and foist upon the Court a tortured interpretation of Mr. Rohde's February 10, 2022 e-mail. No matter the number of red herrings Plaintiff adds to this case, nothing enables him to allege a protected activity prior to Mr. Rohde's February 10, 2022 e-mail. His inability to allege that critical fact requires dismissal of his retaliatory discharge claims.

**Point 5:    When NYCHA Disclosed its Termination Decision to Plaintiff is Irrelevant**

Plaintiff fusses over *when* NYCHA informed him of the termination decision, but that fact is irrelevant.  It makes no difference that Defendants did not inform Plaintiff of their decision to terminate his employment until after his first alleged protected activity.  The date of NYCHA's internal decision is material; the date Plaintiff learned of that decision is not.

New York federal courts agree on this important point.  For example, in *Maitland v. Konica Minolta Business Solutions U.S.A., Inc.*, the defendant selected the plaintiff as part of a group layoff that was scheduled to take effect the following month.  *Maitland*, 2016 WL 304884, at *3.  The plaintiff in that case alleged that he complained of discrimination and retaliation *prior to being informed* of the defendant's layoff decision, but like the case at bar, he did not claim that his first alleged protected activity pre-dated the defendant's internal decision to lay him off.  *Id*. *4.  The court in *Maitland* held that the date of the employer's decision required dismissal of the plaintiff's retaliatory discharge claim.  *Id*. at *12.  It did not matter that the plaintiff first learned of the defendant's decision after his first alleged protected activity.  *Id*.  *Maitland* deemed that fact insufficient to establish retaliation.

The court in *Tse v. New York University* reached the same conclusion.  After the plaintiff in that case exhibited job performance issues, her manager recommended that the defendant terminate her employment.  *Tse*, 2013 WL 5288848, at *4.  For over a year, the defendant in *Tse* neither finalized the termination decision nor informed the plaintiff of her manager's recommendation.  *Id*. at *4-5.  In the interim, the plaintiff filed a discrimination complaint with the New York State Division of Human Rights.  *Id*. at *4.  The court in *Tse* dismissed the plaintiff's retaliatory discharge claims because her manager recommended the termination of her employment prior to her first protected activity.  *Id*. at *17.  It made no difference that the plaintiff

in *Tse* engaged in a protected activity before learning of the termination decision and before the decision took effect.[8]

In accordance with *Maitland* and *Tse*, Plaintiff may not defeat Defendants' motion by merely alleging that Defendants did not inform him of the termination decision until after his first alleged protected activity.  The date of NYCHA's internal decision – not the date Plaintiff learned of that decision – establishes when the "status quo" of Plaintiff's employment changed.  To avoid dismissal, Plaintiff must allege more than when he learned of the termination decision.  That is, he must allege that he complained of discrimination before Defendants decided to terminate his employment.  He cannot allege that required fact, especially in light of Mr. Rohde's February 10, 2022 email and his prior admission that as of February 11, 2022, "the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment *had already been made*, . . ."  Orig. Compl. ¶ 33 (emphasis added).  Accordingly, his retaliatory discharge claims must be dismissed.

**Point 6:  Defendant's Alleged Actions After Mr. Rohde's February 10, 2022 Email Do Not State a Claim for Retaliatory Discharge**

Plaintiff's excessive emphasis on Defendants' post-February 10, 2022 actions is an obvious effort to distract from the real issue here.  None of those allegations change the plain meaning of Mr. Rohde's February 10, 2022 e-mail. As Plaintiff admitted in his Original Complaint, and as Mr. Rohde confirmed via his February 10, 2022 e-mail, Defendants decided to terminate Plaintiff's employment at least one day *before* Plaintiff's first alleged protected activity on February 11, 2022. That makes it impossible for Plaintiff to state a claim for retaliatory discharge.   None of

---

[8] Defendants acknowledge that *Maitland* and *Tse* were summary judgment cases.  But that does not mean those cases are irrelevant here.  The summary judgment standard only relates to the standard of review, not the elements that must be established to plead a viable claim.  *Maitland* and *Tse* nevertheless establish that a plaintiff cannot prevail on a retaliatory discharge claim merely because an employer informs a plaintiff of its termination decision after the plaintiff's first protected activity.  Instead, as set forth in the cases cited herein, a plaintiff must allege facts capable of establishing that he engaged in a protected activity before the defendant decided to terminate his employment. And in any event, Defendants do not rely solely on summary judgment cases. In the other cases Defendants cite herein, such as *Pinero*, *Dooley*, and *McJunkin*, the courts granted the defendants' Rule 12(b)(6) motions to dismiss retaliation claims.

Defendants' alleged actions after February 10, 2022 allows Plaintiff to sidestep that pleading hurdle.

For example, Plaintiff cries foul that Defendants "ignored each and every one of Mr. Forrest's entreaties to correct the record," including "his legal counsel's offer to share a comprehensive point-by-point analysis . . . of the mistakes and fabrications in the [Counseling] Memorandum. SAC ¶ 36. Even if true, however, these allegations were merely pleas for Defendants to reconsider their prior assessment of Plaintiff's job performance and termination decision. Those allegations, therefore, fall squarely within the "refusal to reconsider" line of cases above, which held that a refusal to reconsider a termination decision after a plaintiff complains of discrimination is not actionable retaliation. For the same reasons discussed at length in point 4 *supra*, Defendants' refusal to reconsider their negative assessment of Plaintiff's job performance is not actionable retaliation. *See Dooley*, 2015 WL 1514955, at *4 (citing *Pinero*, 375 F. Supp. 2d at 168); *Maitland*, 2016 WL 304884, at *12; *Tse*, 2013 WL 5288848, at *17.

The suspension of Plaintiff's employment is no different. It does not change the meaning of Mr. Rohde's February 10, 2022 e-mail. And in any case, it is undisputed that Defendants suspended Plaintiff from March 4, 2022 to April 2, 2022 *with pay* and expressly told Plaintiff that his employment would be terminated at the end of his suspension period. *See* SAC ¶¶ 12, 38. Therefore, he did not suffer any damages as a result of the suspension, and Defendants did not renounce or otherwise walk back the termination decision expressed in Mr. Rohde's February 10, 2022 e-mail. For all of these reasons, Plaintiff cannot rely on Defendants' alleged actions after February 10, 2022 in order to state a claim for retaliatory discharge.

23

**Point 7:       Defendants' Alleged Withholding of Plaintiff's "Bonus Retirement Leave Pay" Is Irrelevant to the Motion to Dismiss the Retaliatory *Discharge* Claims**

Plaintiff also alleges – for the first time in the Second Amended Complaint – that Defendants retaliated against him by denying him "no less than $14,850" of "'bonus retirement leave' pay" unless he signed a release of claims.  SAC ¶ 41.  Plaintiff claims, in effect, that NYCHA has a policy under which departing employees receive "bonus retirement leave pay," even if they are fired for poor performance. *See id.* The allegation is pleaded "[o]n information and belief," and Plaintiff does not allege the names of any NYCHA employees who supposedly received this benefit.  *Id*.

Defendants deny the bonus retirement leave pay allegation.  However, for purposes of the Rule 12(b)(6) pleading standards only, Defendants concede that the new allegation in paragraph 41 of the Second Amended Complaint, if (and only if) presumed true, states a narrow claim for retaliatory withholding of the bonus retirement leave pay.  Therefore, Defendants do not seek dismissal of that specific claim via this motion.

That separate claim, however, does not save Plaintiff's retaliatory *discharge* claims from dismissal.  Like the other post-February 10, 2022 allegations, NYCHA's alleged decision to deny Plaintiff bonus retirement leave pay does not disturb the plain meaning of Mr. Rohde's February 10, 2022 e-mail.  The allegation also says nothing about whether, as Plaintiff admitted in his Original Complaint, Defendants' decision to terminate Plaintiff's employment "had already been made" as of February 10, 2022.  *See* Orig. Compl. ¶ 33.  Therefore, the new bonus retirement leave pay allegation has no bearing on the issue presented in this motion, which relates to whether Plaintiff has alleged sufficient facts to establish causation for his retaliatory *discharge* claims.

## VI. CONCLUSION

As set forth above, no amount of discovery can make Plaintiff's retaliatory discharge claims viable. He cannot allege that he engaged in a protected activity prior to Defendants' internal decision to terminate his employment. Faced with this reality, the best Plaintiff can muster are new allegations that Defendants were merely "considering" the termination of his employment prior to his first alleged protected activity and that Defendants should have reconsidered their decision. In accordance with the precedent cited herein, that retaliation theory is defective as a matter of law. Therefore, Defendants respectfully request the Court grant their motion to dismiss the retaliatory discharge claims in the Second Amended Complaint pursuant to Rule 12(b)(6) and grant such other relief as the Court deems proper.

Dated:    January 20, 2023
          New York, New York

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
(212) 370-6296
nmreiter@venable.com
tableistein@venable.com

By:    /s/ Nicholas M. Reiter
       Nicholas M. Reiter
       Taylor A. Bleistein