UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRACY L. FORREST,<br><br>                      Plaintiff,<br><br>       -against-<br><br>NEW YORK CITY HOUSING AUTHORITY,<br>et al.,<br><br>                  Defendants. | 1:22-cv-06480 (JLR)<br><br>**<u>OPINION AND ORDER</u>** |

JENNIFER L. ROCHON, United States District Judge:

Tracy L. Forrest ("Forrest" or "Plaintiff") brings this action against his former employer, the New York City Housing Authority ("NYCHA"), Lisa Bova-Hiatt ("Bova-Hiatt"), David Rohde ("Rohde"), and Haley Stein ("Stein," and collectively, "Defendants"), alleging discrimination and retaliation in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York City Human Rights Law as codified in New York City Administrative Code, § 8-107 *et seq.* ("NYCHRL"), and the New York State Human Rights Law, as codified in New York Executive Law Section 290 *et seq.* ("NYSHRL"). *See* ECF No. 35 ("SAC"). Pending before the Court is Defendants' partial motion to dismiss Plaintiff's retaliatory discharge claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). *See* ECF No. 37 ("Mot."). For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

### I.  The Parties

Plaintiff is a 58-year-old man.  SAC ¶ 4.  He was employed by NYCHA as an attorney in its Law Department from 2002 until April 2, 2022.  *Id*. ¶¶ 4, 12-13.  NYCHA is a public benefit corporation organized under the laws of New York and operates over 340 public housing developments in New York City.  *Id*. ¶ 5.  Bova-Hiatt is NYCHA's Executive Vice-President for Legal Affairs and General Counsel, and currently is serving as Interim Chief Executive Officer. *Id*. ¶ 6.  Rohde is NYCHA's Managing Attorney and Senior Vice-President for Legal Affairs and a member of the Office of General Counsel ("OGC"), and is currently serving as Interim Executive Vice-President for Legal Affairs and General Counsel.  *Id*. ¶ 7.  Stein is Special Counsel to Bova-Hiatt and a member of NYCHA's OGC.  *Id*. ¶ 8.

### II.  Plaintiff's Employment by NYCHA

Plaintiff began working at NYCHA as an attorney on April 1, 2002.  *Id*. ¶ 12.  Over the years, he was promoted to Executive Agency Counsel/Senior Counsel, and then to Chief of the Landlord/Tenant Division.  *Id*. ¶ 13.  As Division Chief, Plaintiff supervised over a dozen attorneys and support staff and oversaw the litigation of thousands of cases on behalf of NYCHA.  *Id*. ¶ 13.  Plaintiff earned positive performance evaluations during his employment, including from his direct supervisors.  *Id*. ¶ 17.

In or around February 2020, NYCHA appointed Bova-Hiatt as its new General Counsel and created the OGC.  *Id*. ¶ 18.  The OGC was comprised of various employees who reported to

---

[1] Unless otherwise noted, the facts stated herein are from the Second Amended Complaint ("SAC"), which the Court accepts as true, and material referenced in the SAC.  *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d 170, 176 (2d Cir. 2013); *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 110-11 (2d Cir. 2010).

the General Counsel, and Bova-Hiatt appointed "younger and inexperienced lawyers" to the OGC.  *Id.*  Bova-Hiatt appointed Stein as Special Counsel, and Hannah Roth ("Roth") as Senior Counsel and, as of July 2021, as the Interim Chief of the Landlord/Tenant Division.  *Id.*  In July 2021, Defendants removed Plaintiff from his participation in executive-level decision-making and meetings, and he was replaced in a leadership capacity by Stein and Roth.  *Id.* ¶ 20.  The SAC alleges that Stein and Roth have no experience in landlord or tenant matters, are women, and are in their mid-30s to early 40s in age.  *Id.* ¶¶ 18, 20.

### III. The October 25, 2021 Meeting

In September 2021, Stein, Rohde, and Plaintiff's direct supervisor met with Plaintiff and directed him to submit answers to questions regarding the development of a plan for processing cases in the Landlord/Tenant Division.  *Id.* ¶ 21.  Plaintiff submitted a written response one week later.  *Id.*  On October 25, 2021, Stein and Rohde again met with Plaintiff regarding the case processing plan.  *Id.* ¶ 22.  At that meeting, Stein and Rohde were critical of Plaintiff's contribution to the plan and told him: "we are done with you."  *Id.*  They further "stripped" Plaintiff of his "reports," i.e., attorneys and support staff whom he supervised, and provided him with one law student as a staff assistant.  *Id.*

In November 2021, Defendants named Laura Bellrose ("Bellrose") as Chief of the Landlord/Tenant Division, with all attorneys and staff who previously reported to Plaintiff now reporting to Bellrose.  *Id.* ¶ 23.  Bellrose, a woman, previously served as an attorney in NYCHA's Law Department Appeals Division.  *Id.*  Bellrose was younger and less experienced than Plaintiff.  *Id.* ¶¶ 23-24.  The SAC alleges that Defendants' "course of action" was "a continuing, brazen, and concerted series of actions ultimately designed to force Mr. Forrest out of NYCHA."  *Id.* ¶ 27.

### IV. The February 10, 2022 Email

On February 10, 2022, Rohde emailed Bova-Hiatt, Stein, and others regarding Plaintiff's separation from employment (the "Separation Email"). *See id.* ¶ 34; ECF No. 38-1 ("Ex. 1"). That email, which is quoted in part in the SAC, stated:

> In order not to be rushing a process that requires careful thought and coordination, I have adjourned the separation meeting with Mr. Forrest to the afternoon of 25 February. The adjourned date should give us sufficient time to finalize the separation agreement to everyone's satisfaction, serve the counseling memo in advance of the separation meeting (if so directed by HR), and align schedules in the L&T division to have managerial coverage/manage any negative impacts in the wake of Mr. Forrest's separation.
>
> Thank you all for your thoughtful input on this matter. We will look [sic] close-out all open issues and fully align on the approach/next steps/timing next week.

Ex. 1; *see also* SAC ¶ 34. In his original complaint in this action, Plaintiff alleged that "the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment had already been made" by February 11, as reflected in the Separation Email. ECF No. 5 ("Complaint" or "Compl.") ¶ 33. After the motion to dismiss the retaliation claims in the original complaint was filed, Plaintiff successively filed his amended complaints in which he alleges that the Separation Email shows that Defendants "were considering terminating Mr. Forrest's employment" but "does not contain a decision, final or otherwise, to do so . . . ." SAC ¶ 34.

### V. The February 11, 2022 Meeting

On February 11, 2022, Stein and Rohde met with Plaintiff and issued him a five-page "Counseling Memo for Unsatisfactory Work Performance" (the "Counseling Memo"). SAC ¶¶ 29, 31. This was the first counseling memorandum for unsatisfactory performance that

Plaintiff received during his employment.  *Id*.  ¶¶ 29-30.  The Counseling Memo warned Plaintiff that he "may be subject to additional disciplinary action up to and including termination of [his] employment."  *Id*. ¶ 32.  The SAC alleges that the Counseling Memo was "a demonstrably false compilation of fabricated 'failures' by Mr. Forrest in the face of evidence that strikingly establishes the contrary."  *Id*. ¶ 31.  For instance, the Counseling Memo criticized Plaintiff for failing to proceed on potential legal cases in which courts had issued warrants, but a court had not yet issued a warrant in most of those cases.  *Id*.

After receiving the Counseling Memo, Plaintiff complained at the February 11 meeting about the "hostile work environment he had been forced to endure and NYCHA's discriminatory treatment of him as an older, male supervisory employee."  *Id*. ¶ 33.  This was Plaintiff's first complaint of discrimination.  Plaintiff informed Stein and Rohde that he intended to retain counsel before any further meeting regarding the Counseling Memo.  *Id*. ¶ 35.  In response, Rohde stated, "[w]hy do you need a lawyer, you are merely getting a counseling memo, that's it," and indicated that the next meeting would take place on February 25, 2022 – the same date referenced in the Separation Email for the then-adjourned separation meeting.  *Id*.; *see* Ex. 1.

## VI. Plaintiff's Separation from NYCHA

On February 22, 2022, Plaintiff's counsel sent NYCHA a letter complaining of discrimination, and counsel for the parties subsequently discussed the allegations in an effort to avoid litigation.  *Id*. ¶ 36.  On March 3, Plaintiff filed an internal NYCHA Department of Equal Opportunity Complaint.  *Id*. ¶ 37.  On March 4, Rohde, Stein, and a NYCHA Human Resources representative met with Plaintiff and informed him that he was being placed on suspension, and that "NYCHA presently intends to end [his] suspension with pay on April 2, 2022, at which time [his] employment will be terminated."  *Id*. ¶¶ 4, 37.  Also on March 4, NYCHA provided

Plaintiff with a copy of the Separation Email.  *Id*. ¶ 34.  On some date after March 4, Defendants required Plaintiff to sign a release of claims in order to receive "bonus retirement leave" upon his separation.  *Id*. ¶ 41.

The SAC alleges, on "information and belief," that no other departing employee eligible for bonus payment had been required to sign a release.  *Id*.  It alleges, on "information and belief," that "any decision to fire Mr. Forrest would have required sign off at the highest levels and approval by Human Resources."  *Id*. ¶ 39.  The SAC further alleges that "a final termination decision was only reached sometime after March 4, 2022," i.e., after Plaintiff and his counsel complained of discrimination and Plaintiff filed his equal opportunity complaint.  *Id*. ¶ 38.

On April 1, 2022, Plaintiff submitted retirement papers in an effort to preserve his pension and benefits.  *Id*. ¶ 4.  His separation from NYCHA thereafter took effect.  *Id*. ¶ 2.  He was 57 years old at the time of the separation.  *Id*.

## VII.   Procedural History

Plaintiff commenced this action by filing the Complaint on July 30, 2022.  ECF Nos. 1, 5. On August 25, 2022, Defendants sent Plaintiff a letter requesting that he dismiss his retaliatory discharge claims or amend them in order to avoid costly motion practice.  ECF No. 38-2.  In the letter, Defendants claimed that the Complaint was defective because Plaintiff was unable to allege a protected activity prior to NYCHA's decision, made on or before February 10, 2022, to terminate his employment.  *Id*. at 2.  Plaintiff declined to amend the Complaint.  *See generally* ECF No. 38-3.  Plaintiff's response letter did not directly refute Defendants' contention that the decision to terminate his employment was reached internally on or before February 10, 2022.  *Id*.

On October 3, 2022, Defendants moved to dismiss Plaintiff's retaliatory discharge claims.  ECF No. 15.  Plaintiff filed his First Amended Complaint in response on October 17,

2022.  ECF No. 18 ("FAC").  On October 31, 2022, Defendants filed a motion to dismiss the FAC, which was fully briefed on November 21, 2022.  ECF Nos. 22, 27, 28.  On January 13, 2023, Plaintiff filed the Second Amended Complaint, and the Court thereafter denied Defendants' motion to dismiss the FAC as moot.  ECF No. 36.

On January 20, 2023, Defendants filed a partial motion to dismiss the SAC's retaliatory discharge claims but not its other retaliation and discrimination claims.  Mot.; *see* ECF No. 39 ("Br.").  Plaintiff opposed the motion on January 27, 2023.  ECF No. 40 ("Opp.").  Defendants filed their reply on February 3, 2023.  ECF No. 41 ("Reply").  Accordingly, Defendants' partial motion to dismiss the SAC is presently before the Court.

## LEGAL STANDARD

### I.  Rule 12(b)(6) Motion

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must "accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor."  *DiFolco*, 622 F.3d at 110-11 (quoting *Shomo v. City of N.Y.*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal brackets omitted).  But the court shall not "accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "Factual allegations must be enough to raise a right of relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[t]his standard requires that the complaint allege 'more than a sheer possibility that a defendant has acted unlawfully' and more than 'facts that are merely consistent with a defendant's liability," *In re Amaranth Nat. Gas Commodities Litig.*, 730 F.3d at 180 (quoting *Iqbal*, 556 U.S. at 678).  "Applying this standard is 'a context-specific task

that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.*

(quoting *Iqbal*, 556 U.S. at 679).

## II.  Retaliation Claims

To state a claim for retaliation under the ADEA, Title VII, NYSHRL, and NYCHRL, a

plaintiff generally must allege "(1) participation in a protected activity; (2) that the defendant

knew of the protected activity; (3) an adverse employment action; and (4) a causal connection

between the protected activity and the adverse employment action." *Torre v. Charter

Communs., Inc.*, 493 F. Supp. 3d 276, 288-89 (S.D.N.Y. 2020) (internal citation omitted); *see

Zoulas v. N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 56-57 (S.D.N.Y. 2019); Br. at 10; Opp. at 6.

Courts must construe NYSHRL and NYCHRL claims more liberally than their federal

counterparts. *See Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir.

2013); *Eur. V. Equinox Holdings, Inc.*, No. 20-cv-07787 (JGK), 2022 WL 4124763, at *7

(S.D.N.Y. Sept. 9, 2022).  Under this standard, a plaintiff may assert a NYSHRL or NYCHRL

retaliation claim by alleging that "she took an action opposing her employer's discrimination,

and that, as a result, the employer engaged in conduct that was reasonably likely to deter a

person from engaging in such action." *Mihalik*, 715 F.3d at 112 (internal citations omitted); *see

Arazi v. Cohen Bros. Realty Corp.*, No. 20-cv-08837 (GHW), 2022 WL 912940, at *17

(S.D.N.Y. Mar. 28, 2022).

Relevant to the instant motion, a retaliation claim – whether brought under federal, state,

or city law – requires a causal connection between the alleged protected activity and the

retaliatory conduct at issue.  *See Torre*, 493 F. Supp. 3d at 288-89 (stating that ADEA, Title VII,

NYSHRL, and NYCHRL retaliation claims require "a causal connection); *Mihalik*, 715 F.3d

at 112 (holding that NYSHRL and NYCHRL require that retaliation was taken "as a result" of

protected activity); *Arazi*, 2022 WL 912940, at *17 (holding that NYCHRL requires "a causal connection between the protected activity and the alleged retaliatory conduct").

## DISCUSSION

Defendants argue that Plaintiff's retaliatory discharge claims fail as a matter of law because Defendants made the decision to terminate Plaintiff's employment prior to his first protected activity, which undisputedly occurred on February 11, 2022. *See* Br. at 1-3. Defendants argue that the Separation Email incorporated into the SAC, and the admission by Plaintiff in his initial Complaint, confirm this sequence of events and thereby defeat Plaintiff's retaliatory discharge claims. *See id*. at 13-18. Plaintiff argues that his pleadings support an inference that no final termination decision was made until after his first protected activity. *See* Opp. at 23-25. Plaintiff further contends that, even if Defendants made a termination decision earlier, it was not disclosed to Plaintiff until after his protected activity. *See id*. at 18-23. As set forth below, the Court finds that the SAC does not plausibly allege a causal nexus between Plaintiff's protected activity and the termination of his employment.

### I.   Threshold Issues

The Court will address two threshold issues before proceeding to the retaliatory discharge claims. First, Defendants argue that the Court should consider the Separation Email because the document is incorporated by reference into the SAC. *See* Br. at 2-3; Reply at 1 & n.1; *see also* Br. at 15-18. Plaintiff does not oppose this argument and, in fact, relies on and quotes from the Separation Email in his brief. *See* Reply at 1 n.1; *see generally* Opp.

The Court may, on a motion to dismiss, "consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit."

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  "Where a document is referenced in a complaint, 'the documents control and this Court need not accept as true the allegations in the amended complaint.'"  *Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016) (quoting *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000)).  Here, the SAC expressly refers to and quotes from the Separation Email.  SAC ¶ 34.  The SAC further alleges that Defendants provided Plaintiff with the email on March 4, 2022, well before Plaintiff commenced this lawsuit, and Plaintiff relies on the email in his pleadings.  *Id*.  Accordingly, the Court will consider the Separation Email because it is incorporated into the SAC and Plaintiff possessed and relied upon the email in bringing this action.  *See ATSI Commc'ns, Inc.*, 493 F.3d at 98.

Second, Defendants urge the Court to consider Plaintiff's "admission" in the original Complaint that, as of February 11, 2022, "the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment *had already been made*."  Br. at 11-14; *see* Compl. ¶ 33.  Plaintiff argues that the Court should not consider this allegation and should instead only look to the SAC, which Plaintiff insists clarifies but does not contradict his earlier pleading.  *See* Opp. at 16-17.

"[A]n amended complaint ordinarily supersedes the original, and renders it of no legal effect."  *Dluhos v. Floating & Abandoned Vessel*, 162 F.3d 63, 68 (2d Cir. 1998) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).  However, "where allegations in an amended pleading directly contradict pleadings in the original complaint, courts have disregarded the amended pleading."  *Underwood v. Coinbase Glob., Inc.*, __ F. Supp. 3d __, 2023 WL 1431965, at *6 (S.D.N.Y. Feb. 1, 2023) (quoting *Wheeler v. Slanovec*, No. 16-cv-09065 (KMK), 2019 WL 2994193, at *6 (S.D.N.Y. July 9, 2019)); *Grimes v. Fremont Gen.*

*Corp.*, 933 F. Supp. 2d 584, 592 n.1 (S.D.N.Y. 2013) (stating that "a court may disregard amended pleadings when they directly contradict facts that have been alleged in prior pleadings" (quoting *Kilkenny v. Law Office of Cushner & Garvey, L.L.P.*, No. 08-cv-00588, 2012 WL 1638326, at *5 (S.D.N.Y. May 8, 2012)).  As a result, the facts alleged in a complaint can ultimately defeat the claims alleged in a subsequent amended complaint.  *See Underwood*, 2023 WL 1431965, at *6; *see also Pacheco v. Serendensky*, 393 F.3d 348, 354 (2d Cir. 2004) (stating that district court could have granted motion to dismiss where the facts alleged "put a lie to [the petitioner's] general allegations," since an "assertion of fact in a pleading is a judicial admission by which [the party] normally is bound throughout the course of the proceeding" (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985))); *cf. Andrews v. Metro N. Commuter R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) (concluding that district court's failure to allow jurors to consider original complaint, which conflicted with the amended complaint, was a substantial abuse of discretion).

The Court finds that the SAC directly contradicts the original Complaint.  In relevant part, the original Complaint alleged:

> The false and fabricated conclusion to the February 11, 2022 memorandum is exemplified by the fact that, as Mr. Forrest learned weeks later, *the decision by Ms. Bova-Hiatt, Mr. Rohde and Ms. Stein to terminate Plaintiff's employment had already been made*, expressly excluding Mr. Forrest's direct supervisors and without providing Mr. Forrest . . . any opportunity at all to address the falsehoods and inaccuracies contained in the memorandum (or correct them, were there any basis of fact to the criticisms, which there was not).

Compl. ¶ 33 (emphasis added).  Thus, the original Complaint alleged that "the decision . . . to terminate Plaintiff's employment had already been made" by the time that Defendants issued the Counseling Memo and Plaintiff thereafter engaged, for the first time, in protected activity.  *Id.*

After Defendants pointed this out in their motion to dismiss and otherwise, Plaintiff thereafter deleted this allegation and, in its place, the SAC alleges that "Mr. Forrest later learned that at about the time the Memorandum was presented to him, Ms. Bova-Hiatt, Mr. Rohde, and Ms. Stein were already *considering* terminating Plaintiff's employment."  SAC ¶ 34 (emphasis added).  The SAC further alleges that the Separation Email did "*not* contain a decision, final or otherwise," to terminate Plaintiff's employment.  *Id.* (emphasis added).

Plaintiff's argument that the SAC merely clarifies and explains the original Complaint is not compelling.  *See* Opp. at 16-17.  It is true that an amended complaint generally may clarify, explain, or even omit allegations made in an original complaint.  *See Dluhos*, 162 F.3d at 68.  But that is not this case, where, as the Court has found, allegations in the SAC run directly contrary to the original Complaint.  *See Grimes*, 933 F. Supp. 2d at 592 n.1 (recognizing that, where amended pleadings contradict the original complaint, the original complaint controls); *see also TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 601 & n.5 (S.D.N.Y. 2013) (distinguishing cases involving "contradictory – not omitted – pleadings" in which the original complaint controlled, from other cases in which courts declined to consider the original complaint).[2]

---

[2] Plaintiff principally relies on *Williams v. Countrywide Bank*, an unpublished decision that Plaintiff incorrectly cites as a decision from this District.  No. 3:18-cv-02007 (VAB), 2019 WL 3858659, at *1 (D. Conn. Aug. 16, 2019); *see* Opp. at 16.  *Williams* is unhelpful to Plaintiff, however, because it involved a motion for leave to amend under the Rule 15(a) standard, not a Rule 12(b) motion.  *Williams*, 2019 WL 3858659, at *3-4.  Although the court in *Williams* credited the plaintiff's contention that proposed amendments might "aid all parties and the Court in determining when certain acts took place" even if they would "alter its statute of limitations analysis," the court's decision did not analyze the substance of the proposed amendments, how the proposed amendments might contradict the complaint, or whether the original complaint might be considered if the defendant later moved to dismiss.  *Id.* at *4 (internal quotation marks and citation omitted).

Plaintiff attempts to evade the consequences of his conflicting pleadings by deeming the original Complaint "inartfully" drawn.  Opp. at 15-16.  The Court is not convinced for several reasons.  First, the same counsel filed Plaintiff's three successive complaints, and Plaintiff has not persuasively explained how the allegation at issue was anything other than deliberately made.  Second, in response to Defendants' August 2022 premotion letter on this precise issue, Plaintiff did not suggest the Complaint was merely inartful and did not directly refute that the termination decision was made before February 11; instead, he expressly acknowledged "the alleged February 10, 2022 decision to terminate Mr. Forrest's employment."  ECF No. 38-3, Ex. 4 at 3.  Third, and most importantly, the Complaint is unequivocal: it expressly alleges that the termination decision "had already been made" before any protected activity occurred, and refers to that decision as a "fact" within Plaintiff's knowledge.  Compl. ¶ 33.

*Underwood v. Coinbase Global, Inc.* is instructive.  In *Underwood*, the original and amended complaints contained conflicting allegations regarding the existence of privity and who held title to property.  2023 WL 1431965, at *6.  Because of this conflict, the court held that it "need not, and does not, accept the [Amended Complaint]'s contrary allegations" for purposes of the motion to dismiss.  *Id*. at *8.  It noted that the amended allegations at issue "unavoidably emerge as strategically added to elude the facts pled in the Complaint," and without the contrary allegations, the court found that the amended complaint failed to state a claim.  *Id*. at *7-8.  Similarly, in *Wheeler v. Slanovec*, the court declined to credit the amended complaint's "new and contradictory allegation" as to the date the plaintiff became aware of the existence of certain search warrants, and instead accepted the allegations in the original complaint for purposes of

deciding the motion to dismiss.  2019 WL 2994193, at *6.[3]  There is an equally strong basis here to accept the original Complaint's allegation and not the contrary allegations in the SAC that appear to have been made to evade dismissal.

Accordingly, the Court will consider the Separation Email and allegation in the Complaint regarding the termination decision rather than the SAC's contrary allegations.  *See Tongue*, 816 F.3d at 206 n.6; *Grimes*, 933 F. Supp. 2d at 592 n.1.

## II. Retaliatory Discharge Claims

The parties do not dispute that the SAC adequately pleads several elements of the retaliatory discharge claims.  It is not disputed that, as alleged in the SAC, Plaintiff first engaged in protected activity when complaining of discrimination at the February 11 meeting; Defendants knew of that activity; and Plaintiff's termination is an adverse employment action and would deter an employee from engaging in such activity.  *See, e.g.*, Br. at 6; Opp. at 10-11.  The instant motion, therefore, centers on whether Plaintiff adequately alleges that his termination was a result of his alleged protected activity, i.e., whether Plaintiff has adequately pleaded causation. The Court finds that he has not.

---

[3] *See also Dozier v. Deutsche Bank Tr. Co. Americas*, No. 09-cv-09865 (LMM), 2011 WL 4058100, at *4 (S.D.N.Y. Sept. 1, 2011) (dismissing claims without considering allegations in amended complaint that "run contrary to allegations in [the plaintiff]'s previous pleadings"); *Poindexter v. EMI Rec. Grp. Inc.*, No. 11-cv-00559 (LTS) (JLC), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) ("[E]ven though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits."); *Colliton v. Cravath, Swaine & Moore LLP*, No. 08-cv-00400 (NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008), *aff'd*, 356 F. App'x 535 (2d Cir. 2009) ("Where a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss . . . [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true.'" (quoting *Wallace v. N.Y.C. Dep't of Corr.*, No. 95-cv-04404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996))).

A plaintiff "may not base her claim of retaliation upon complained-of-acts that predated her speaking out," *Bernheim v. Litt*, 79 F.3d 318, 325 (2d Cir. 1996), because such a claim lacks a causal nexus between the retaliation and protected activity, *see Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005) (dismissing retaliation claims because "the adverse employment action occurred prior to the protected activity").  In other words, "[t]here can be no causal connection when the alleged protected activity occurred after . . . the alleged retaliation." *Maitland v. Konica Minolta Bus. Sols. U.S.A. Inc.*, No. 09-cv-01675 (JMA) (AKT), 2016 WL 304884, at *9, *12 (E.D.N.Y. Jan. 25, 2016), *aff'd sub nom. Maitland v. Konica Minolta Bus. Sols.*, 691 F. App'x 653 (2d Cir. 2016).  This principle accords with common sense, since conduct "that preceded protected activity . . . could not have been in retaliation for acts not yet taken." *Gregory v. Daly*, 243 F.3d 687, 701 (2d Cir. 2001) (determining that an employer's conduct prior to the protected activity could not be retaliatory).

The Court finds that the SAC does not plausibly allege a causal nexus between Plaintiff's protected activity and termination for several reasons.  First, the SAC alleges "gradual adverse job actions" against Plaintiff that began many months *before* Plaintiff's first complaint of discrimination on February 11, 2022.  *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).  Approximately eight full months before Plaintiff's complaint, in July 2021, Defendants reduced Plaintiff's role in executive-level decision-making and meetings.  SAC ¶ 20.  By October 2021, the SAC alleges that Stein and Rohde (i) met with Plaintiff about his performance and duties, (ii) expressed their criticism of his case processing plan, (iii) removed some of Plaintiff's supervisory responsibilities, and (iv) told Plaintiff that "we are done with you." *Id*. ¶ 22.  By November 2021, the SAC alleges that there was a "concerted series of actions ultimately designed to force Mr. Forrest out of NYCHA." *Id*. ¶ 27.  On February 11,

2022, still before Plaintiff complained of discrimination, the SAC alleges that Defendants issued the Counseling Memo and again met with Plaintiff regarding his unsatisfactory performance.  *Id*. ¶¶ 29-32.  This extensive period of progressive disciplinary actions, all before Plaintiff's first complaint of discrimination, undermines an inference that the termination of Plaintiff's employment was the result of his subsequent participation in protected activity.

In *Slattery v. Swiss Reinsurance America Corp.*, the "crucial issue" with respect to the plaintiff's retaliation claims was, like here, whether there existed "a causal nexus between his complaints" and the defendant's "adverse employment actions."  248 F.3d at 95.  The employer in *Slattery* began diminishing the plaintiff's job responsibilities five months before the plaintiff made his discrimination complaint, and the employer subsequently terminated the plaintiff after he made his protected complaint.  *Id*. at 90, 95.  The Second Circuit held that the temporal proximity of the protected activity and eventual termination could not support a causal nexus there because, like here, "the gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity . . . ."  *Id*. at 95.  The Court explained that "the adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline' which began when [the defendant] diminished [the plaintiff]'s job responsibilities a full *five months prior* to his filing of the EEOC charges."  *Id*.  It therefore concluded that the plaintiff's retaliation claims, brought under federal and state law, lacked the requisite casual nexus.  *Id*.  The Second Circuit's holding in *Slattery* applies equally here, where the SAC alleges an extended period of negative actions months before Plaintiff's first protected activity.

Although *Slattery* was decided on a summary judgment motion, courts routinely apply the Second Circuit's holding regarding causation in *Slattery* on motions to dismiss.  In *Torre v.*

*Charter Communications, Inc.*, for example, the plaintiff, like here, brought retaliation claims under the ADEA, Title VII, NYSHRL, and NYCHRL.  493 F. Supp. 3d at 284.  The plaintiff there, like here, alleged an internal "restructuring" designed to diminish older employees and replace them with younger employees.  *Id*. at 281.  Relying on *Slattery*, the court dismissed much of the plaintiff's retaliation claims "[b]ecause the alleged retaliatory conduct was gradual and started well before Plaintiffs' complaints."  *Id*. at 289.  Similarly in *Dooley v. Jetblue Airways Corp.*, the district court granted a motion to dismiss the plaintiff's retaliation claims because it found, citing *Slattery*, that the alleged adverse employment action "took place before she engaged in th[e] protected activity," and the Second Circuit affirmed that determination on appeal.  No. 14-cv-04432 (JMF), 2015 WL 1514955, at *4 (S.D.N.Y. Apr. 1, 2015), *aff'd in relevant part*, 636 F. App'x 16 (2d Cir. 2015).  Here, too, the SAC alleges that the retaliatory conduct was gradual and began months before Plaintiff engaged in protected activity.  The SAC, therefore, fails to raise a plausible inference that the termination of Plaintiff's employment was the result of that activity.

Second, the original Complaint's allegation that "the decision . . . to terminate Plaintiff's employment had already been made" before Plaintiff's first protected activity defeats causation.  Compl. ¶ 33.  In other words, this allegation provides an additional basis from which to conclude that Plaintiff's termination had already been decided by at least February 11, 2022, such that the SAC's retaliatory discharge claims fail.  *See also Slattery*, 248 F.3d at 95.

Third, even if the Court did not consider the allegations in the original Complaint, the Separation Email independently undercuts any causal nexus because it shows that Defendants reached their decision to terminate Plaintiff's employment before he engaged in protected activity.  The email stated that, as of February 10, 2022, Defendants had already planned a

"separation meeting"; Defendants were finalizing their "separation agreement"; Defendants intended to issue the Counseling Memo "in advance of the separation meeting"; and Defendants were preparing for "any negative impacts in the wake of Mr. Forrest's separation."  Ex. 1; *see also* SAC ¶ 34.  Because the SAC incorporates this email, *see supra* Discussion § I, "the document[] control[s] and this Court need not accept as true the allegations in the amended complaint."  *Tongue*, 816 F.3d at 206 n.6 (citation omitted).  On this basis, the Court finds that the SAC fails to plead causation and the retaliatory discharge claims must be dismissed.  *See id*.; *Slattery*, 248 F.3d at 95.

Plaintiff argues that any adverse actions taken before Plaintiff's February 11 complaint do not bear on the question of causation because Defendants did not "provide Plaintiff with an unequivocal notice of termination" until at least March 4, 2022.  Opp. at 18-23 (emphasis and capitals omitted).  Plaintiff cites no case from this Circuit that imposes an "unequivocal notice" standard for causation on a retaliation claim, however, and Plaintiff's reliance on cases in "different contexts" is unavailing.  *Id.* at 18.  Plaintiff first relies on *Medacist Sols. Grp., LLC v. CareFusion Sols., LLC*, No. 19-cv-01309 (JMF), 2021 WL 293568, at *6 (S.D.N.Y. Jan. 28, 2021), but that is a breach of contract case wholly unrelated to employment discrimination or retaliation standards.  Plaintiff cites *Shultz v. Congregation Shearith Israel*, 867 F.3d 298, 309-10 (2d Cir. 2017), in which the employer informed the plaintiff that they would be terminated but, unlike here, never actually terminated their employment or took other adverse actions.  *DeSalvo v. Metro. Opera Ass'n, Inc.*, No. 96-cv-08292 (DC), 1997 WL 337517, at *2-3 (S.D.N.Y. June 19, 1997) is equally inapposite because it concerned the "timeliness of a discrimination claim" for purposes of a statute of limitations defense, not the assessment of causation.  Lastly, the Court is unpersuaded by Plaintiff's reliance on *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055,

1058, 1061 (7th Cir. 2014), a case from the Seventh Circuit which relied on statute of limitations precedent and where, unlike here, the employer decided to terminate the employee after learning of his alleged medical issue and disability.

Notwithstanding Plaintiff's hodge-podge of authorities, courts in the Second Circuit have rejected Plaintiff's argument and dismissed retaliatory discharge claims because the employer made their termination decision before the protected activity.  In *Maitland v. Konica Minolta Business Solutions U.S.A. Inc.*, the court dismissed retaliation claims because "the decision to terminate [the plaintiff] occurred prior to his" protected activity, even though the decision was not communicated to the plaintiff until after his protected activity.  2016 WL 304884, at *9, *12. Similarly, in *Tse v. New York University*, the court held that the employer's "decision to remove" the plaintiff occurred as of the date her termination was recommended internally at the university, which took place one month before her protected activity, even though a final termination decision was neither reached nor communicated to the plaintiff until several months later.  No. 10-cv-07207 (DAB), 2013 WL 5288848, at *17 (S.D.N.Y. Sept. 19, 2013); *see also Torre*, 493 F. Supp. 3d at 288-89 (granting motion to dismiss because the alleged retaliatory conduct "started well before" the protected activity).  Here, too, the termination decision was made before Plaintiff's first protected activity, which is the relevant assessment for purposes of a causation analysis.  In other words, if Defendants had already decided to terminate Plaintiff's employment before the protected activity, as shown by the alleged surrounding circumstances, Plaintiff's admission in the original Complaint, and the Separation Email, the protected activity could not have been the cause of the adverse employment action of termination regardless of when Plaintiff was notified of the decision.

Plaintiff further argues that Defendants' failure to investigate his discrimination complaint and thereafter reevaluate its termination decision somehow resuscitates his retaliatory discharge claims. *See* Opp. 23-25. The SAC alleges that Defendants "ignored each and every one of Mr. Forrest's entreaties to correct the record" and "his legal counsel's offer to share a comprehensive point-by-point analysis . . . of the mistakes and fabrications in the [Counseling] Memorandum." SAC ¶ 36. However, the Second Circuit has held that an "employee whose complaint is not investigated cannot be said to have thereby suffered a punishment for bringing that same complaint." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (affirming dismissal of claims premised on a "retaliatory failure to investigate"). Plaintiff's retaliation claims premised on the failure to investigate his complaint or reconsider the termination decision, therefore, fail as a matter of law. *See, e.g.*, *Torre*, 493 F. Supp. 3d at 289 ("Plaintiffs' claims of retaliation premised on Charter's alleged failure to investigate their claims, therefore, fail as a matter of law."); *Pinero*, 375 F. Supp. 2d at 168 (dismissing retaliation claims based on "Defendant's failure to reevaluate" its decision because such inaction "kept the status quo in place" and was "a consequence of the fact that [the plaintiff] was being terminated").

The Court does agree with Plaintiff, however, that allegations of retaliation premised on his suspension from NYCHA survive the instant motion. *See* Opp. at 23-24. The SAC alleges that Defendants suspended Plaintiff with pay on March 4, 2022, one day after Plaintiff filed an internal complaint with NYCHA's Department of Employment Opportunity. SAC ¶ 4. In a final paragraph of their moving brief devoid of citation, Defendants argue that the suspension is "no different" from the termination, and that no injury resulted from the suspension because it was "with pay." Br. at 23. Plaintiff contends that the suspension was, at the least, "humiliating." Opp. at 12. Given this, on this record and Defendants' narrow motion to only dismiss the

"retaliatory *discharge* claims" presently before the Court (Br. at 24), the Court declines to dismiss Plaintiff's retaliation claims premised on his alleged suspension, not his termination.[4]

In sum, because the SAC fails to adequately plead a causal nexus, Plaintiff's retaliatory discharge claims under Title VII and the ADEA are dismissed.  The Court has further considered Plaintiff's retaliatory discharge claims under the NYSHRL and NYCHRL and finds that they fail for the same reasons as the federal claims: Plaintiff has not plausibly alleged that, "as a result" of his protected activity, he was terminated.  *Mihalik*, 715 F.3d at 112.

## CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss the SAC is GRANTED in part and DENIED in part.  Plaintiff's retaliatory discharge claims are DISMISSED.  Plaintiff's other claims of discrimination and retaliation remain.

The Clerk of Court is respectfully directed to terminate ECF No. 37.

Dated: May 2, 2023
     New York, New York

     SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge

---

[4] The Court declines to rule on other bases for Plaintiff's retaliation and discrimination claims to the extent they are separate from his discharge and not presently before the Court.  *See* Opp. at 23 (noting allegations that Defendants refused to provide time for Plaintiff to find a lawyer and prohibited Plaintiff from reporting to work during the last month of his employment).